GILBRAITH, *Appellant*, V. GALLIVAN.

**Married Woman's Deed**: CORRECTION OF CERTIFICATE OF ACKNOWL-
EDGMENT. After a married woman's deed had been delivered, and
the officer who certified the acknowledgment had gone out of office,
he undertook to correct a defect in the certificate. *Held*, that his
act was void for want of power. *Wannall v. Kem*, 51 Mo. 150; s. c.,
57 Mo. 478, distinguished.

*Appeal from Johnson Circuit Court.*—HON. NOAH M. GIVAN,
Judge.

REVERSED.

*J. M. Crutchfield* and *Land & Sparks* for appellant, cited
*Elliott v. Persoll*, 1 Peters 328; *Bours v. Zachariah*, 11 Cal.
281; *Merritt v. Yates*, 71 Ill. 636; *Ellwood v. Klock*, 13 Barb.
50; *Watson v. Bailey*, 1 Binn. 470; *Jourdan v. Jourdan*, 9
Serg. & Rawl. 268, 275; *Ennor v. Thompson*, 46 Ill. 214;
*O'Ferrall v. Simplott*, 4 Green (Iowa) 162; *Stanton v. But-
ton*, 7 Conn. 527; *Pendleton v. Button*, 3 Conn. 406; *Hayden
v. Wescott*, 11 Conn. 129; *Mariner v. Saunders*, 5 Gill. (Ill.)
113; *Moore v. Tisdale*, 5 B. Mon. (Ky.) 352; *Woods v. Pol-
hemus*, 8 Ind. 60; *Chauvin v. Wagner*, 18 Mo. 531; *Silliman
v. Cummins*, 13 Ohio 116; *Martin v. Dwelz*, 6 Wend. 9;
*Carr v. Williams*, 10 Ohio 305; *Looney v. Adamson*, 48 Tex.
619; *Jackson v. Ingraham*, 4 John. 163; *Williams v. Soutter*,
55 Ill. 130; *Willis v. Gattman*, 53 Miss. 721; Abbott's Trial
Ev., 174, § 15.

*O. L. Houts* for respondent.

WINSLOW, C.—This is an action of ejectment for an
undivided interest in 160 acres of land in Johnson county,
Missouri, commenced in the circuit court of that county,
January 21st, 1879. The petition is in the usual form; and
the answer a general denial, except the admission that de-
fendant was in possession. The trial was before a jury,
and the verdict and judgment were for defendant; to re-

verse which the plaintiff brings the case here by appeal. It was admitted on the trial that George Reiter was the common source of title; that the plaintiff is one of the only five equal heirs of one George F. Maus, who died intestate before the commencement of this suit; that plaintiff was a married woman at the time, but her husband was dead before the commencement of this suit; that defendant holds the possession; that the damages shall be $1, the rents and profits $2, per month. Plaintiff next read in evidence a deed from George Reiter and wife, to George F. Maus for the entire land, dated December 14th, 1864, which was in all respects sufficient to vest the legal title in him. This made out a *prima facie* case for plaintiff, and entitled her to the verdict and judgment.

For the purpose of showing this *prima facie* title out of plaintiff and in himself, defendant offered in evidence a deed from the admitted heirs of G. F. Maus, to Ursula Reiter, embracing the land in controversy, dated July 7th, 1866, and purporting to be acknowledged before C. H. Gordon, clerk of probate of Moniteau county, Missouri, on the day of its date. This deed is signed by plaintiff and her then husband, whose names appear on the face of the deed and in the certificate of acknowledgment, but the certificate of the notary entirely omits the privy examination of the plaintiff, thus rendering the deed void as to her. To remedy this defect the deed was sent to Gordon, who, on April 5th, 1871, indorsed a proper certificate upon it, containing the privy examination of plaintiff. This certificate recites the appearance of the parties as of the date of the deed. In the body he describes himself as clerk of the probate court; but the testimonium is as follows: "In testimony whereof I have hereunto set my hand and affixed the seal of said court this 5th day of April, 1871. C. M. Gordon, late clerk of probate court." This deed was objected to by plaintiff, because not properly acknowledged. The objections were overruled, and the deed admitted. Defendant then introduced a deed from Ursula Reiter and her husband to him-

self, dated October 22nd, 1874, for the land in controversy. No acknowledgment or certificate of record appears; but plaintiff saved no exceptions on these grounds.

Plaintiff, in rebuttal, offered evidence to show that she never was, at any time, subjected to a privy examination by Gordon. Defendant, also, offered parol evidence tending to show that the facts stated in the certificate of April 5th, 1871, were true. An agreed statement of facts was read in evidence showing that Gordon was not the clerk of the Moniteau probate court, at the time he attached the amended certificate to the deed in controversy, and did not pretend to be acting in any official character whatever in performing said act; but that he was such clerk at the date of the deed, and when he took the first acknowledgment.

The only question in this case relates to the validity of the amended certificate of acknowledgment, placed upon the deed from the heirs of G. F. Maus to Ursula Reiter, by Gordon, the former clerk of the Moniteau probate court, long after his official term had expired, and when he had no official authority nor any right to the custody or use of the seal. The facts surrounding this question are very plainly stated above, just as the record shows them, and need not be stated here; in fact, there is no dispute about them.

Respondent relies on the cases of *Wannall v. Kem*, 51 Mo. 150, and 57 Mo. 478. A critical examination of these cases will disclose that they do not satisfactorily decide the question in the form here presented. The case first cited was a bill in equity to foreclose a mortgage, executed by Kem and his wife, on lands belonging to the wife in fee, to secure a note alleged to have been executed by them to plaintiff's indorser, and to correct a mistake in the mortgage, the alleged mistake being in the omission of the notary to insert in his certificate of acknowledgment the privy examination of Mrs. Kem, although he had actually taken the same. The notary was made a party. The relief

asked was a decree of the court correcting the alleged mistake. There was no amended certificate on the mortgage, and no prayer for a *mandamus* on the notary to put one there, and no such questions were before the court. There was a demurrer to the bill, because of its insufficiency, and because the notary was not a proper or necessary party to the suit. The real question in judgment was, whether a court of equity possessed the power to correct a mistake in the acknowledgment of a deed of a married woman for her fee simple lands; and this was the only question the court could legitimately decide under the issues. But Adams, J., in writing the opinion of the court, after holding that a court of equity possessed no such power, because it was a statutory power conferred upon the officer, departed from the case before him and remarked, somewhat *obiter:* " The officer may voluntarily correct his certificate, or make out a proper certificate where he has given a defective one, if the facts really exist to warrant such action. If the officer refuses to make a proper certificate, he may be compelled to do so by *mandamus.*" It will be observed that no authorities are cited or reasons given why this should be so; and the remarks of the learned judge who wrote the opinion may be fairly classed as *obiter dictum.*

The second case cited between these same parties was an action on the note secured by the mortgage, which was given to one Brolaski, the plaintiff's indorser, for certificates of stock in a gas works company. One defense was, that the note was secured by fraudulent representations as to the stock. Mrs. Kem interposed a separate defense to the effect that she never was, in fact, subjected to a privy examination by the notary. These issues were tried by a jury, who found for defendant. Napton, J., in disposing of some questions put to Mrs. Kem, while on the stand as a witness, tending to prove that she really knew the contents of the deed and really executed it voluntarily, etc., having been informed by her husband, comments on and explains the policy of our statute in requiring those facts

to be ascertained and certified by an officer, rather than proven before the trial courts, but does not mention the power of these officers to grant amended certificates where they have made defective ones.   57 Mo. 482.   In explaining the verdict of the jury on Mrs. Kem's defense, the learned judge alludes to the history of these acknowledgments, and the previous proceedings in the case, and then alludes to the amended certificate thus :   " This court, however, on a review of this case, decided that the courts had no power over such mistakes, but intimated that the notary —the officer who took the acknowledgment—might correct the certificate, if, in point of fact, this privy examination, explanation etc., had in fact been made.   *Wannall v. Kem*, 51 Mo. 150."

It is a little remarkable that the real point in issue in the first case is classed as decision, while the point as to the power of the officer to grant the amended certificate is merely classed as intimation.   After stating the fact that a perfect certificate was substituted for the original, which was erased, long after the acknowledgment, he remarks : "If we assume this last certificate as true, and stating the facts as they occurred, it is plain that the notary, at the date of his examination and certificate, was perfectly aware of what was required by the statute."   The effect this strange conduct of the notary might have had on the minds of the jury, in producing a verdict for Mrs. Kem, is then commented on.   The defense was finally disposed of on the ground that there were no improper instructions, and the verdict was conclusive on the facts.   57 Mo. 483, 484.   The sixth instruction given by the court explains the probative force of the amended certificate, as *prima facie* true, and tells the jury to find a verdict against Mrs. Kem on it, provided they also find a verdict against Kem on his defense of fraud, and she has not disproven the certificate.   57 Mo. 487.   The remainder of the case contains a learned discussion of Kem's defense of fraud, which is finally disposed of on the strength of the verdict of the jury.

These cases furnish the only foundation, in this State, for the doctrine that an officer, even while yet an officer, may amend his certificate of acknowledgment to the deed of a married woman for her fee simple lands, after he has delivered it to the grantees, with a defective certificate indorsed. It is not difficult to perceive that the doctrine rests on a slim foundation, so far as direct adjudication is concerned, when so eminent a jurist as Judge Napton could only speak of it as having been intimated by this court. Counsel for respondent have been unable to furnish us any other authority on the subject, and we presume they are possessed of no more.

These cases certainly furnish no authority for extending the doctrine sought to be maintained by them, to a person who was an officer when he made the defective certificate, but had long ceased to be such officer, and was acting in a strictly private capacity when he made the amended certificate, as was the fact in the case at bar. In the *Kem cases* the notary was still in office, surrounded by the sanctity of his official oath, deterred by the penalty of his official bond, and resting under the fear of punishment for official misconduct. These are the safeguards which the statute has, in the wisdom of its policy, thrown around the estates of married women, and the courts have jealously guarded and protected them in the construction and enforcement of the statute, as the adjudicated cases will plainly demonstrate.

These facts were not present in this case when Gordon attached his amended certificate. He made no pretense of any official capacity, but only assumed to act as a private individual in performing an act which should have been done under the seal of official sanctity. What right had he to imprint the official seal of the court, which had passed into the custody of another, who was alone empowered to imprint it, on any legal document? Suppose he had made a false certificate, as it is alleged he did, where is the protection of the plaintiff on his official bond, or her right to

subject him to criminal punishment for official misconduct? What becomes of the policy of the statute and the entire system inaugurated by the legislature in the laws requiring the execution of deeds to be established under the official protection of officers and courts designated for the purpose, if "late" officers after they have become private individuals, may perform these functions, imprinting official seals to which they have no longer any right, invading offices over which they have no official control to procure them for use, and acting without any legal sanction whatever? We have carefully examined this question, and are all decidedly of the opinion that to extend the doctrine intimated in the *Kem cases*, beyond the official term of the officer performing the original act, so as to sustain the certificate before us, would result in the utter subversion of our entire system for the execution of deeds, especially with reference to the fee simple lands of married women, and establish a precedent that would prove pernicious in its results. All the cases in other courts which we have examined are strongly opposed to the doctrine in any form. See *Bours v. Zachariah*, 11 Cal. 281; *Silliman v. Cummins*, 13 Ohio 116; *Merritt v. Yates*, 71 Ill. 636; *Ellwood v. Klock*, 13 Barb. 50; *Jourdan v. Jourdan*, 9 Serg. & Rawle 269.

For the reasons stated, the judgment should be reversed and the cause remanded. All concur.