# Griffiith *v.* Ventress.

*Bill in Equity by Purchaser, in nature of Specific Performance; Cross-Bill for Foreclosure of Mortgage.*

1. *Infant defendants; decree pro confesso against.*—When minors are necessary defendants to a bill, as where it seeks a divestiture of their legal title to land, the record must show that they were properly brought into court and represented; and a decree *pro confesso* against them, when it does not appear that they were represented by a guardian *ad litem* properly appointed, will work a reversal of the final decree.

2. *Mortgage of homestead; certificate of acknowledgment by wife, and subsequent amendment thereof by certifying officer.*—A mortgage of the homestead, signed by husband and wife, but not acknowledged by the wife as required by law, is a nullity; and when the certificate of acknowledgment is substantially defective, the certifying officer has no authority to correct the defects at a subsequent time, nor to append a new certificate.

APPEAL from the Chancery Court of Barbour.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 31st December, 1887, by Junius Griffith and the heirs at law of Jere Griffith, deceased, against the administrator and heirs at law of Thomas Ventress, deceased, and was in the nature of a bill for specific

performance, seeking a divestiture of the legal title to a tract of land out of the defendants, and a decree vesting it in complainants; and it also prayed an injunction of a judgment in ejectment, which the administrator of Ventress had obtained for the possession of the land. The tract of land, which contained about 365 acres, was sold by Thomas Ventress to said Junius and Jere Griffith, in January, 1879, executing a bond for the conveyance of title when the purchase-money was paid; and the bill alleged that the purchase-money was paid in full before his death, which occurred in October, 1886. On the 25th April, 1887, the administrator brought an action to recover the possession of the land, and obtained a judgment on the 23d November, 1887. The bill alleged, also, that on the 31st January, 1885, after the purchase-money for the land had been paid in full, Junius Griffith executed to said Thomas Ventress a mortgage on his undivided half interest in the land as security for another debt; that this mortgage was fully paid and satisfied during the life of Ventress, and that the action by his administrator was not founded on it.

An answer to the bill was filed by the administrator, denying that the purchase-money for the land had ever been paid, or that the mortgage had ever been satisfied; and he made his answer a statutory cross-bill, praying a foreclosure of the mortgage. A decree *pro confesso* was taken against the adult defendants, and also against the non-resident minor defendants; but the record does not show the appointment of a guardian *ad litem* for them, or any answer or appearance in their names. The record does not show that any answer was filed to the cross-bill, but the original bill was afterwards amended, by an allegation that the land conveyed by the mortgage was the homestead of said James Griffith, and that the mortgage was void because not properly acknowledged by his wife. It was admitted that the original certificate of acknowledgment to the mortgage was defective and insufficient; but the defendant administrator relied on a new certificate, which was appended to it by Judge Alston, which was made and dated August 20th, 1889.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainants, holding that the purchase-money for the lands had been paid, and that they were entitled to a conveyance of the legal title; but he further held that the mortgage was valid, and required the payment of the outstanding balance due on it, $448 with interest, as a condition precedent to a conveyance in favor of Junius Griffith. The appeal is sued out by Junius Griffith, and this part of the decree is the only matter assigned as error.

[Griffith v. Ventress.]

JERE N. WILLIAMS, for appellants.—The mortgage of the homestead was a nullity, because not properly acknowledged by the wife; and its defects could not afterwards be supplied. Parol evidence could not be received to cure the defects, nor could a court of equity correct them. If the probate judge had power to make a new certificate, he could only do so during the continuance of his term of office, and on a re-examination of the wife. Here, it was made after the expiration of his term of office, when he was acting under a new election, a new bond, and a new official oath; was not at the instance of the mortgagor and his wife, but when they were resisting the mortgage on account of the defect. What is said in *Cox v. Holcomb*, 87 Ala. 591, as to the power of the officer to amend his certificate, is a mere *dictum*, and is not supported by authority. If the new certificate could have any effect, it could not affect the rights of the parties to this suit.—*Hendon v. White*, 52 Ala. 597; *Chadwick v. Carson*, 78 Ala. 120.

ROQUEMORE, WHITE & McKENZIE, and GEO. W. PEACH, *contra*, cited *Cox v. Holcomb*, 87 Ala. 591; *Wanall v. Kem*, 51 Mo. 150; *Carlisle v. Carlisle*, 78 Ala. 542.

COLEMAN, J.—The record contains the following statement of facts: On and prior to the 12th day of January, 1879, Thomas Ventress was possessed of and owned in fee certain lands described in the pleadings, and on that day sold the same to Junius Griffith and Jere Griffith, put the vendees in possession, and executed his bond to make them valid titles upon the payment of the expressed consideration. The entire purchase money was afterwards paid, but Thomas Ventress died without executing a deed of conveyance as provided for in his bond for titles. Prior to the death of Thomas Ventress, but after he had received the entire purchase-money, one of his vendees, on the 31st January, 1885, executed a mortgage to the said Thomas Ventress on his entire half interest in the lands, to secure the payment of a new indebtedness for the sum of $619.66. Both Junius Griffith and Jere Griffith were married, and with their wives, respectively, occupied the lands purchased, but separate parts as their respective homesteads. These lands are situated in the county, comprise *in toto* three hundred and sixty-five acres, and are of less value than two thousand dollars.

James C. Ventress, the appellee, qualified as the administrator of Thomas Ventress, and as such administrator brought suit in ejectment, and recovered the entire lands, and damages

[Griffith v. Ventress.]

for the detention thereof, by virtue of the legal title of his intestate, and from which he had never parted, and not upon the title conveyed to him by the mortgage. After his purchase, Jere Griffith died, and left surviving him Isham Griffith and Sarah Noble. Thomas Ventress left several adult heirs, and also Ellen J. Taylor, a minor over fourteen years of age, and John Taylor, Mary L. Taylor, and other minors under fourteen years of age. All the minors are non-residents.

The wife of Junius Griffith signed the mortgage with her husband. The acknowledgment was taken before J. H. Alston, probate judge of Barbour county, on the day of the date of the mortgage, to-wit, 31st January, 1885. This certificate of the acknowledgment by the wife is defective and insufficient to make the mortgage valid as to the homestead. After the filing of this bill, to-wit, on the 20th August, 1889, the probate judge made and added a new certificate to the mortgage, complying in all respects with the law as to conveyances of the homestead. It does not appear that Junius Griffith or his wife knew of or consented to the additional certificate.

The object of the present bill is to divest the legal title out of the heirs of Thomas Ventress, and invest the same in the complainants, and to have the mortgage declared null and void, because the certificate of the acknowledgment by the wife of Junius Griffith was fatally defective.

It has been often decided by this court, that parties in whom the legal title is vested must be in court, before a decree can be properly rendered, divesting them of their title. In all cases where minors are interested as material defendants, they must be represented by a guardian *ad litem* properly appointed. 71 Ala. 50. A decree *pro confesso* against minor defendants, not represented by a guardian *ad litem*, is wholly irregular; and in cases where the legal title is vested in them, it is the duty of this court to reverse the case, and remand the cause, that they may be properly made parties, and their interest protected. The record shows a decree *pro confesso* against Ellen J. Taylor, John Taylor, and other minor defendants, and it fails to show that they have at any time been represented by a guardian *ad litem*.

James C. Ventress, individually, and as the administrator of Thomas Ventress, answered the bill, and by cross-bill sought a foreclosure of the mortgage. The difficult question in the case is, as to the legality of the new certificate made by the probate judge to the mortgage on the 20th of August, 1889— over four years after the first certificate, and after the expiration of the term of office held by him when he made the first certificate, although he had been re-elected, and was occupying

24

the same official position when he made the second certificate.

The question has never been directly before this court, and the authorities are not in harmony. In the case of *Cox v. Holcomb*, 87 Ala. 591, it is stated: "While no case has been heretofore presented, in which the wife was in fact examined separate and apart from her husband, touching her signature to an alienation of the homestead, and made the statutory acknowledgment of her voluntary signature and assent, and the officer before whom the acknowledgment was made omitted to certify in substantial compliance with the statute; the principles which underlie the case, and are decisive of the question involved, should be regarded as well settled. An alienation of the homestead by a married man, not executed by the wife in the manner prescribed by the statute, has been uniformly held to be a nullity. . . The Constitution and the statute have reference to some mode of alienation by which the title passes *in præsenti*." It has been uniformly held, that courts of equity, in the absence of statutory authority, can not relieve against the defective execution of a power created by statute, nor supply any of the formalities requisite to its due execution.

To sustain the authority of the probate judge to add his last certificate, and thereby render the mortgage valid, we have been referred to a statement of the court made in the case of *Carlisle v. Carlisle*, 78 Ala. 544, and of *Cox v. Holcomb*, just cited. It will be seen from the extract quoted from the latter case, that the court stated that the precise question had never arisen in this State. In the case of *Carlisle v. Carlisle*, the justice of the peace, before whom the acknowledgment was made, failed to sign the certificate. It was not contended that the certificate was sufficient, or that the justice of the peace could then affix his signature, so as to make the certificate valid. In the body of the certificate the name of the justice appeared, and the attempt was made to show that his name was written by the justice himself, and thus to bring the certificate within the principle laid down in *Sharp v. Orme*, 61 Ala. 163, and *Rogers v. Adams*, 66 Ala. 600, where it was held that a defective certificate of acknowledgment "may, from necessity, operate as a substitute for the formal attestation of a witness." In the case of *Carlisle v. Carlisle*, the justice had ceased to be a justice, and had removed from the county in which he held the office of justice of the peace. At the conclusion of the opinion, the court stated: "The officer who filled the blanks in the printed form on the deed has ceased to be such officer, and is unauthorized to make a certificate as justice of the peace in Pike county, to have effect by

[Griffith v. Ventress.]

relation as if done at the time he was acting as such officer."
No authority is cited, and the question now under consideration was not involved in that case, and not determined.

At the close of the opinion in the case of *Cox v. Holcomb*, 87 Ala. 592, the court says: "The officer taking the acknowledgment may, during his continuance in office, voluntarily correct his certificate, or make a new one conforming to the statute, if the facts warrant; but a court of equity will not assume to correct or aid the defective execution of such statutory powers." The case of *Wanall v. Kem*, 51 Mo. 150, is referred to as sustaining this proposition. Whether an officer taking the acknowledgment may, during his continuance in office, voluntarily correct his certificate, was not a question in the case, and the statement must be regarded in the nature of a *dictum* of the court. If, however, the principle is correct, and sustained by authority, and is applicable, it is decisive of the question under consideration.

By referring to the case of *Wanall v. Kem*, 51 Mo. 150, quoted, it will be seen that the court uses the precise language used by this court in the case of *Cox v. Holcomb*, and just quoted. By examination, it will be seen the precise question was not before the court in the case of *Wanall v. Kem*, 51 Mo., *supra*. The bill was filed to foreclose a mortgage given by Kem and wife, upon lands belonging to the wife. The bill admitted the insufficiency of the certificate of the notary public, made him a party defendant, and sought to have the certificate amended by the decree of the court. It was held that a court of equity had no jurisdiction to correct the mistake, and the bill was dismissed. In the opinion rendered it was stated: "The officer may voluntarily correct his certificate, when he has given a defective one, if the facts really exist to warrant such action." Several authorities are referred to in this opinion, but a careful examination shows that none of them sustain the court in its *dictum*. The authorities there cited are on the point, that a court of equity has no jurisdiction to correct such mistakes.

Acting on the suggestion made by the court, the notary, who had continued in office, did afterwards perfect his certificate, and the question came up again, and is reported in 57 Mo. 478—*Wanall v. Kem*. On this trial, the facts of the amended certificate were controverted by Mrs. Kem, and the issue submitted to a jury. The precise question was presented in the 6th charge to the jury. The jury found the issue in favor of Mrs. Kem, and against the truth of the facts as stated in the new certificate. The issue having been determined in favor of Mrs. Kem, she did not appeal, but the plaintiff did

appeal. Whether charge No. 6, which involved the question now considered, asserted a correct proposition, was not before the court on appeal, and could not have been adjudicated; but the judgment of the lower court was affirmed, and in conclusion, the court, Napton, J., made this significant statement : "We are satisfied the law in this case was stated to the jury in the most favorable form it could have been for the plaintiff, in fact more favorable than the adjudications authorize."

The case of *Gilbraith v. Gallivan*, 78 Mo. 456, was one in which the officer who took the acknowledgment, and made the certificate after he had gone out of office, undertook to correct a defect in his certificate. The opinion rendered discussed the cases reported in 51 Mo., and 57 Mo.; and the court declared the statement, that "the officer may voluntarily correct his certificate, or make out a proper certificate, where he has given a defective one," was made without citing authority, or reason, and was "fairly an *obiter dictum*." Further commenting on these two cases (51 Mo. and 57 Mo.), the court uses the following language : "These cases furnish the only foundation in this State for the doctrine, that an officer, *even while yet an officer*, may amend his certificate of acknowledgment to the deed of a married woman for her fee-simple lands, after he has delivered it to the grantees with a defective certificate. It is not difficult to perceive that the doctrine rests upon a slim foundation, so far as direct adjudication is concerned, when so eminent a jurist as judge Napton could only speak of it as having been intimated by the court. Counsel for the respondent have been unable to furnish us any other authority on the subject, and we presume they are possessed of no more."

The case in 51 Mo. has been discussed at length, because it was referred to in 87 Ala., *Cox v. Holcomb*. After a careful examination, we hold, it is not an authority in point, and it has been expressly declared an *obiter dictum* by the later decisions of the same State.

In the case of *Jordan v. Corey*, 2 Ind. 385, it was held that the officer could amend his certificate ; and to support the proposition, the case of *Elliott v. Piersol*, 1 Peters, 328, was cited. An examination of this case discloses the fact, that it does not sustain the propsition. The case in 1 Peters arose under the construction of a Kentucky statute, and in construing the statute the court says : "The Kentucky statute, above cited, shows clearly that the legislature of that State has never lost sight of the principle declared by the Virginia statute, 'That when any deed has been acknowledged by a *feme covert*, and no record made of her privy examination, such deed is not binding on the *feme* and her heirs.' What the law requires to

be done and appear of record, can only be done and made to appear by the record itself. It is not the fact of privy examination merely, but the recording of the fact, which makes the deed effectual to pass the estate of a *feme covert.*" The court then proceeds as follows: "Had the clerk authority to alter the record of his certificate of the acknowledgment of the deed, at any time after the record was made? We are of opinion he had not. We are of opinion he acted ministerially, and not judicially in the matter; and until his certificate was recorded, it was in its nature but an act *in pais*, and alterable at the pleasure of the officer. But the authority of the clerk to make and record the certificate of the acknowledgment of a deed was *functus officio* as soon as the record was made. If a clerk may, after a deed, together with the acknowledgment or probate thereof, has been committed to record, under color of amendment, add any thing to the record of acknowledgment, we can see no just reason why he may not subtract from it. . . Such a doctrine would be, in practice, of very dangerous consequences to the land titles of the country, and can not receive the sanction of this court."

The reasoning and conclusion of the court in this case excludes it as an authority to sustain the proposition declared in the Indiana case, that the officer before whom an acknowledgment is made, may voluntarily alter or amend his certificate, at any time during his continuance in office. It is to the reverse. See, also, *Murrell v. Diggs,* 10 Amer. State Rep. 893.

In the case of *Bours v. Zachariah,* 11 Cal. 281, it was held, that the certificate of a notary public to a deed is not an act *in pais*, which he may exercise by virtue of his office at any time while in office; that he "derives his power from the statutes, acts under a special commission for that particular case, and, after taking the acknowledgment, and making and delivering the return, his functions cease, and he is discharged from all further authority, and can not alter or amend his certificate." Mr. Justice Baldwin, who delivered the opinion, thus referred to the case of *Jordan v. Corey,* 2 Ind. 385, which we have above considered: "We do not deem it necessary to criticise the case of *Jordan v. Corey,* in 2 Ind. 385. That case we think wholly unsupported by authority." The case in 11 Cal. is directly in point, and the reasoning of the court appears to us to be conclusive.

In the case of *Merrit v. Yates,* 71 Ill. 638, Walker, J., delivering the opinion of the court, said: "It is also contended that the subsequent certificate, written by the justice of the peace some years after the first was made, cured the defective certificate, although the deed was not acknowledged. We have

been referred to no precedent for such action, and we should confidently expect none can be found. Anciently, such acknowledgments could only be taken in open court, and entered on the records of the court in proceedings tedious, expensive, and incumbered with much form. It was at that time regarded of too much moment to be left to the loose and uncertain action of unskilled persons, and the title to property held by married women was guarded with such care as only to permit it to be divested by the judgment of a court of record. Justices of the peace, and other enumerated officers, have, however, under our laws, been intrusted with the power to take and certify such acknowledgments; and when in conformity with the statute, the act is clothed with the same force and effect that was anciently produced by the judgment of a court of record." The precise question was decided here, and it was held, a justice of the peace could not cure any defect in his first certificate at a subsequent time, unless the parties to the deed re-acknowledged it.

The case of *Harmon v. Magee,* 57 Miss. 414, declares: "The acknowledgment of a married woman is an essential part of a conveyance executed by her. If wanting, it can not be supplied; if defective, it can not be amended; if properly authenticated, it can not be gainsaid nor questioned, save for fraud. The officer who takes it, performs a judicial act in determining whether it was acknowledged in the mode and manner required by law; and he is required by his certificate to authenticate the judicial conclusion to which he has arrived." Although in this case the court held, that the officer might, at any time after the acknowledgment, while in office, make up the record, yet, having once made it, it could not be altered. The facts stated in the opinion of the court show that the married woman re-appeared before the officer, and admitted the acknowledgment, when the last certificate was made.

Several of the States have statutes providing the manner in which defective certificates of acknowledgments to deeds of conveyance may be remedied. We have none in Alabama. Many authorities are cited in the American and English Encyclopædia of Law, p. 150; Amer. Dec. 522, and upon investigation, we find the great weight of authority and reason in support of the propositions, that the power conferred on certain officers to take acknowledgments to deeds of conveyance is statutory, and courts of law or equity have no jurisdiction to amend or correct defective executions of the power; that the acknowledgment and certificate are essential parts of the conveyance; that the officer before whom the acknowledgment is made, and who is required to make the certificate, acts judi-

cially when certifying to the acknowledgment made before him; and when delivered to the parties, and accepted for record, or as the complete execution of the instrument, he has no power to alter, add to, or make a new certificate, without a re-acknowledgment. It is not necessary to determine the effect of such re-acknowledgment, and new or amended certificate as to such re-acknowledgment, further than has already been declared by this court in numerous decisions.

These conclusions accord with principles declared in many cases in our court, and with our own statute.—Code, § 2508; *Scott v. Simmons*, 70 Ala. 357; *Miller v. Marx*, 55 Ala. 338, 339; *Cox v. Holcomb*, 87 Ala. 589; *Rogers v. Adams*, 66 Ala. 600; *Cahall & Pond v. Build. & Loan Asso.*, 61 Ala. 631; *Sharp v. Orme*, 61 Ala. 263. They may work a hardship in some cases, but they afford a much safer protection to titles than to leave such important interests to the voluntary action, and uncertain memory of the officers authorized by statute to take acknowledgments and make the certificates. If he can add to a certificate, why not abstract from it? If he can make a new certificate four years after the deed has been delivered and recorded, why not twenty years after, and perhaps after parties and witnesses have died? If courts of law and equity are powerless to inquire into and determine the correctness of these certificates, and change them in accordance with the real facts, it is difficult to perceive why such power should rest with the officer who made them. We hold that the second certificate was made without legal authority, and is invalid.

Reversed and remanded.

