This was a civil action, commenced by the plaintiff before the clerk of the Superior Court, and transferred to the civil issue docket of Rowan County Superior Court.
1. The plaintiffs brought the action for the partition of the lands in question, which they inherited from their mother, Mary Jane Beaver, as they alleged, the land having been before then conveyed by Simeon J. Beaver (who owned it) and wife, Mary J. Beaver, to said Mary J. Beaver, on 4 March, 1893, registered 15 March, 1893. The defendant, Archie Beaver, answered and set up sole seizin to the lands, claiming under a deed executed 2 November, 1917, by Simeon J. Beaver and wife, Mary J. Beaver, to Simeon C. Beaver and (498) wife, Mary Jane Beaver, recorded in Book 147, at page 293, and under a will of S.C. Beaver, dated 27 November, 1919 (record, p. 16), devising the land to the said Archie Beaver.
2. S.C. Beaver died in February, 1921, and his wife, Mary J. Beaver, died in July, 1920. This suit was commenced on 20 June, 1921, and summons was served 21 June, 1921. After the summons was served, and long after the death of both S.C. Beaver and wife, Mary J. Beaver, the justice of the peace who took the probate to the deed of 2 November, 1917, executed a new probate, in accordance with the provisions of C.S. 2515. The court refused to admit in evidence the deed with the new certificate. The only point involved in this case is the legal effect of the deed of 2 November, 1917. If this deed is void, the plaintiffs were entitled to recover.
Judge McElroy held as a matter of law that the deed was void, as the probate was not taken in accordance with the provisions of C.S. 2515.
The evidence as to the probate of the deed was substantially as follows:
The following is the probate first taken by the justice on 2 November, 1917:
NORTH CAROLINA — ROWAN COUNTY.
Be it remembered that on this 2 November, 1917, before the undersigned W. L. Kimball, a justice of the peace of said county, personally appeared Simeon C. Beaver and wife, Mary J. Beaver, the grantors named in the foregoing deed, and acknowledged the due execution thereof by them as their act and deed, and thereupon the said Mary J. Beaver, wife of Simeon C. Beaver, being by me privately examined, *Page 535 
separate and apart from her said husband, touching her free consent to the execution of said deed, on such separate examination declared she executed the same freely, of her own will and accord and without any force, fear, or undue influence on the part of her said husband, or any other person, and does still voluntarily assent thereto. Therefore, let the said deed, together with this certificate, be registered.
Witness my hand and private seal, date above written.
W. L. KIMBALL, [SEAL.]
Justice of the Peace.
NORTH CAROLINA — ROWAN COUNTY.
The foregoing certificate of W. L. Kimball, a justice of the peace of Rowan County, is adjudged to be in due form and according to law. Therefore, let the said deed, with the certificates, be registered.
JOHN B. MANLY,
Deputy Clerk Superior Court.
Registered 10 November, 1917, at 2 p.m., in Book 147, at p. 293.
To the introduction of the foregoing deed the plaintiffs object. Objection sustained; defendants except. (499)
W. L. Kimball testified for defendants: "I am a justice of the peace of Rowan County, and have been a justice for about 18 or 20 years. On 2 November, 1917, I drew a deed from Simeon C. Beaver and wife, Mary J. Beaver, to themselves. They were both present and gave directions as to how they wanted the deed drawn."
"Q. I want you to state to the jury what directions they gave you as to the drawing of this deed." Plaintiffs object; objection overruled. A. "Mrs. Beaver wanted to make the land to her husband, and in the event one or the other would die, the land would go to the one that would survive. That was the object. That was the way they wanted, and the intention they wanted. This deed that is shown to me is in my own handwriting, and is the one I drew up. I took the acknowledgment of Mrs. and Mr. Beaver, and took her private examination on 2 November, 1917."
"Q. When you took her private examination on 2 November, 1917, I want you to tell the jury what facts, if any, what conclusions, if any, you found on that day, and why you did not embody your findings and conclusions in the certificate of that date?" Plaintiffs object; objection sustained; defendants except.
Questions by the court: *Page 536 
"Q. At the time you took this acknowledgment, did you attempt to do anything else except to take the ordinary private examination of the wife? A. I did ask more questions than I usually do.
"Q. At that time, you didn't mean to set out anything different from the ordinary private examination? A. There was a good deal of discussion and talk.
"Q. You didn't attempt to find the facts and adjudge the matters as required by this section of this Revisal? A. No, sir.
"Q. You didn't know that section was in existence? A. No, sir."
The following evidence was excluded:
"Q. (Defendant's counsel): Tell what conclusions you formed in your own mind when this deed was executed by Simeon C. Beaver and wife to themselves? A. I came to the conclusion that it certainly could not injure her. It never had been her land. It originally belonged to him and, as they both stated, he turned it over to her as protection, and she now turned it back, and in the event of his death it would go to her. She could not possibly be injured in any way. I found this at that time."
To the foregoing the plaintiffs object; objection sustained; defendants except.
"Q. Did you come to that conclusion? A. I came to the (500) conclusion that it could not possibly be injurious to her at that time."
To the foregoing question and answer plaintiffs object; objection sustained. Evidence excluded; defendant excepts.
"Q. After you found out that you had omitted your conclusions from the certificate, and that the law required your conclusions to be embodied in your certificate, did you then file a new certificate to that deed? A. I did."
To the foregoing question and answer the plaintiffs object; objection sustained. Evidence excluded; the defendants except.
"Q. Is this certificate attached to the deed which I hand you, that is, the certificate that you signed on 29 June, 1921? A. Yes, sir."
(This was after the death of both parties, and the new certificate was drawn up on 29 June, 1921.)
"Q. Does this certificate, dated 29 June, 1921, embrace and set out your conclusions you came to on 2 November, 1917? A. Yes."
Plaintiffs object; sustained; defendants except. *Page 537 
"Q. At the time you drew the deed on 2 November, 1917, mentioned in the pleadings, did you know that the law required your conclusions to be set out? A. No, sir."
"Q. If you had known that there was such a law, would you have embodied it in your certificate?" Plaintiffs object; sustained; defendant excepts.
The defendant proposed to show that if the justice had known that the law required his conclusions to be put in his certificate, that he would have put them in, and that his findings and conclusions were omitted through ignorance or inadvertence.
The defendant next offered in evidence the deed dated 2 November, 1917, heretofore introduced in evidence, together with the certificate of probate signed by W. L. Kimball, justice of the peace, on 20 June, 1921, and registered in Book 167, page 99, which new certificate is in words and figures as follows (omitting acknowledgment and privy examination, which are in the usual form):
I further certify that on said 2 November, 1917, I carefully examined into the facts causing the execution of said deed, and found that the original deed was in the name of Simeon C. Beaver, and that he became financially involved, and in order to save his lands, executed a deed to his wife, Mary J. Beaver, and that she held the title to said lands in trust and upon the understanding and agreement to reconvey the same to him when called upon, and that she really had no interest in said real estate; I further find as a fact, at said time, that the said Mary J. Beaver desired to execute a title to her said husband for said lands, and it was the purpose to so fix the title that the survivor should have the land at the death of the other. I also certify (501) that I found as a fact, on 2 November, 1917, that said conveyance of said deed from Simeon C. Beaver and wife, Mary J. Beaver, was not unreasonable or injurious to her, the said Mary J. Beaver, and that no undue advantage was taken of her. All of the foregoing facts were found by me, and the acknowledgement made by Mary J. Beaver on 2 November, 1917, the date of the execution of the said deed, and the date the probate was made, and that these facts were omitted by me through ignorance of the law, mistake, and inadvertence.
Witness my hand and private seal, this 29 June, 1921.
W. L. KIMBALL, [SEAL.]
Justice of the Peace.
This certificate is to be read in connection with and as a part of the deed heretofore offered in evidence. *Page 538 
NORTH CAROLINA — ROWAN COUNTY.
The foregoing certificate of W. L. Kimball, a justice of the peace of Rowan County, is adjudged to be in due form and according to law. Therefore, let the said deed with this certificate be registered.
J. F. McCUBBINS,
Clerk Superior Court.
Registered in Book 167, at page 99, on 4 July, 1921, at 10 a.m.
To the introduction of the foregoing deed, with last certificate of probate, the plaintiffs object; sustained; defendants except.
Cross-examination: "I found out that my certificate of probate was improper when this case came up. I dictated my last certificate."
"Q. Could you dictate to the stenographer the certificate? A. Yes. On the private examination of the said M. J. Beaver, she says that she executed the same freely, of her own will and accord, without any influence. I find that she voluntarily said that she executed the deed voluntarily, without any fear of her husband or any one, and that she still voluntarily assents thereto, and that she further said that she wanted Mr. Beaver to have the land, that it was his land, had been his land, and he had given it to her because he had got in a little trouble, intended to make it back as soon as the time came to do it; the time had now come, and she wanted him to have it, in case of his death she wanted it so that the one who would survive would get the land. As to the findings of fact that it was not injurious, this is an unusual certificate, you know. I could not do that. It is not on our blanks. Defendants' counsel prepared the certificate. That is, he typewrote it, but I read it over. I am willing to swear to anything that is on it. It is my certificate, if he did write it."
R. A. Smith testified for defendants: "I was a magistrate and (502) drew a deed from Simeon C. Beaver and his wife, Mary J. Beaver. I do not remember who was present, but I know that he was present, and she also."
"Q. (By defendant) `You may state what they told you about this deed, the way they wanted it fixed, and what was the understanding, if any, between Simeon C. Beaver and Mary J. Beaver'." To the foregoing question plaintiffs object; sustained; defendants except.
The defendant proposed to show by this witness the following facts: "I was called to his home to fix some papers for him. He wanted a deed made for the property; that it was Simeon C. Beaver's property *Page 539 
and they wanted it made to his wife. I asked why, and he said, `Well, he got into some trouble some way, and he wished to make the deed to her.' I drew the papers the best I knew how, and the papers were recorded. My recollection was that he wanted a deed made to her in order to keep from paying a certain sum, or something like that; there was some trouble that he was looking for, and he wanted to make this deed to his wife that way."
"Q. Was anything said about how long she was to hold it for him? A. I would not be positive whether there was or not. Four or five years after this deed was made, she asked me if they could sell and make a good title, and I told them that they could, so far as I knew. I do not remember the number of acres."
The judge charged the jury as follows: "In this case of Smith v. Beaver, the defendant Archie Beaver relies entirely on the deed dated 2 November, 1917, which S.C. Beaver and his wife attempted to execute to S.C. Beaver and wife. The court instructs you, gentlemen, as a matter of law, that the deed is void, and that S.C. Beaver, under whom the defendant Archie Beaver claims, took nothing by it. Now, that being the view of the law taken by the court, it is unnecessary to go further into the facts, as he relies entirely on that deed, and if the deed is void, he had no title whatever to this particular tract of land. The will of S.C. Beaver, so far as this tract of land is concerned, did not pass the title to it, he did not own it, and he could not will it. As I understand it, there is another tract of land about which there is no controversy, devised by Beaver to this same defendant, Archie Beaver, but as the deed was void, any attempt that S.C. Beaver made to devise the land by the will, in so far as this particular tract of land is concerned, conveyed nothing.
"Now, this court submits for your consideration the following issue, gentlemen: Are the plaintiffs the owners in fee simple of an undivided three-fourths interest in the lands described in the complaint, as therein alleged?
"The court instructs you, gentlemen, that if you believe the evidence taken in its light most favorable to the defendant (503) Archie Beaver, you will answer that issue `Yes.' If you do not believe the evidence, you will answer it `No.'"
To the foregoing charge, and to the court directing the jury that if they believe the evidence they should answer the issue "Yes," and to the failure to give instructions requested, the defendant excepted.
The jury answered the issue "Yes." Judgment for plaintiff, and exception by defendant, who appealed. *Page 540 
After stating the case: Whatever may be the true rule in cases of this kind, concerning the power of the justice to alter his certificate, as to the probate of a deed and privy examination of a married woman, who was a party to it, he cannot do so long after the probate was taken and the certificate had been made and filed (on 2 November, 1917), and the deed duly registered on that date, when the justice admitted, in answer to questions from the judge, as was done in this case, that "he did not attempt to find the facts and adjudge the matters as required by section of the Revisal, and that he did not even know, at the time (2 November, 1917), that the section was in existence," and it appears that both of the parties to the deed, husband and wife, were dead at the time the justice made an entirely new certificate in which he attempts to find material facts not stated in his first certificate, and essential to have been found and inserted in it at the time it was made.
In the case of Butler v. Butler, 169 N.C. 584, this Court, in considering a somewhat similar case, said, through Justice Allen, at p. 588: "There is much conflict of authority as to the power of a judicial officer to amend his certificate of probate after the instrument he is probating has passed from his hands, but it seems that the weight of authority is against the exercise of the power (1 Devlin on Deeds, sec. 539et seq.), and all agree that it is a power fraught with many dangers. The higher judicial tribunals are not permitted to correct their records without notice to the parties and without an opportunity to be heard, and if the position of the defendant can be maintained, a justice of the peace, who has no fixed place for the performance of his official duties, may at any time, and when parties cannot be heard, change his certificate of probate and materially affect the titles of property."
The exercise of the power of amendment by a justice in a case of this kind was fully discussed in the several opinions filed in Butler v. Butler, supra, and we need not extend that discussion but very little in (504) this opinion. The case of Jordan v. Corey, 5 Ind. 385, where the Court held that the justice could amend his certificate, is said, in 1 A. E. (2 ed.), at pp. 552 and 553, and notes, to have been disapproved by the other courts as being wholly unsupported by reason or by precedents elsewhere, and the Supreme Court of Missouri, which at one time adopted the same doctrine in Wannall v. Kern, 51 Mo. 150, afterwards disapproved and overruled the case in Gilbraith v. Gallivan,78 Mo. 456, and it was also criticised, and the Court refused to follow *Page 541 
it, in Griffith v. Venters, 91 Ala. 366 (24 Am. St. Rep. 918), where the subject is fully and exhaustively treated and many authorities cited, showing how the question is viewed by the courts generally of this country. The Supreme Court of the United States had this question before it in Elliott v. Lessee of Peirsol, 1 Peters (U.S.) 328 (7 L.Ed. 164) where it was said: "Had the clerk authority to alter the record of his certificate of the acknowledgment of the deed at any time after the record was made? We are of the opinion he had not. We think he acted ministerially and not judicially in the matter. Until his certificate of the acknowledgment of Elliott and wife was recorded, it was, in its nature, but an act in pais, and alterable at the pleasure of the officer. But the authority of the clerk to make and record a certificate of the acknowledgment of the deed was functus officio as soon as the record was made. By the exertion of his authority, the authority itself became exhausted. The act had become matter of record, fixed, permanent, and unalterable; and the remaining powers and duty of the clerk were only to keep and preserve the record safely. If a clerk may, after a deed, together with the acknowledgment or probate thereof, have been committed to record, under color of amendment, add anything to the record of the acknowledgment, we can see no just reason why he may not also subtract from it. The doctrine that a clerk may at any time, without limitation, alter the record of the acknowledgment of a deed made in his office would be, in practice, of very dangerous consequence to the land titles of the country, and cannot receive the sanction of this Court." There are numerous cases to the same effect. But we will not base our decision of this case upon a lack of power residing in the probate officer to amend his certificate after it has been fully executed, filed, and acted upon by a registration of the deed, or instrument, for we are of the opinion that if such a power exists, it should not extend to a case like the one we are now considering, as before any such power should be exerted, the party (for instance, the feme covert) whose interests may be, and likely will be, materially and vitally affected by it, should have had notice of what was intended to be done a reasonable time before it was done, and a fair opportunity to be heard in opposition to it, and to defend and safeguard her (505) rights, and such an amendment should not be permitted after the death of the feme, who is by the statute required to be privately examined separate and apart from her husband, and who would be the only witness, except the justice, to the fact, as to whether her examination by him was conducted according to the statute (Rev. 2107; C. S. 2515), otherwise those claiming under her would be completely at the mercy of the probate officer, and this limitation upon his power is more *Page 542 
imperatively required because by the statute his findings are made conclusive. That parties are entitled to notice, and a hearing, before substantial and material alterations can in any event be made would seem to require no authority, as Justice Allen said in the Butler case, supra, and we repeat it here, because of its great importance, even "the higher tribunals are not permitted to correct their records without notice to the parties and without an opportunity to be heard," and further, he said: "And if the position of the defendant can be maintained, a justice of the peace, who has no fixed place for the performance of his official duties, may, at any time and when parties cannot be heard, change the certificate of probate and materially affect the title to property." This matter has been considered in the courts of other jurisdictions. InEnterprise Transit Co. v. Sheedy, 49 Am. Rep. 130, the headnote reads: "A notary public, having made and delivered a defective certificate of acknowledgment of a deed, cannot amend it in the absence of the grantor." And the Court said in its opinion: "This attempt to impart life to a void instrument has the merit of novelty. When Mrs. Sheedy affixed her name to the written instrument and acknowledged it, the acknowledgment was confessedly so defective as not to bind her or pass her title to the land. It was then delivered, and eleven days thereafter recorded. More than five months after the acknowledgment was actually taken, and the certificate thereof signed by the notary public indorsed thereon, he wrote and signed a second certificate of acknowledgment. The parties to the instrument did not again come before him, but he certifies what occurred months before. To this last certificate he adds facts not contained in his former certificate, with a view and for the purpose of making valid the writing of a married woman, which was then invalid. Effect cannot be given to this latter action of the notary public." And Merritt v. Yates, 71 Ill. 638 (22 Am. Rep. 128), where a similar question was presented, the Court said: "It is also contended that the subsequent certificate, written by the justice of the peace on the deed some years after the first was made, cured the defective certificate, although the deed was not reacknowledged. We have been referred to no precedent for such action, and we would confidently expect that none could be found. Anciently, such acknowledgments (506) could only be taken in open court, and entered on the records of the court in proceedings tedious, expensive, and encumbered with much form. It was at that time regarded of too much moment to be left to the loose and uncertain action of unskilled persons, and the title to property held by married women was guarded with such care as only to permit it to be divested by the judgment of a court of record. Justices of the peace, and the other enumerated *Page 543 
officers, have, however, under our laws, been entrusted with the power to take and certify such acknowledgments, and when in conformity with the statute, the act is clothed with the same force and effect that was anciently produced by the judgment of a court of record. It is said that courts of record permit amendments to their records — sheriffs to amend their returns, and compel officers by mandamus to perform legal duties. There is no rule more rigidly enforced than that the opposite party must have notice in all cases of amendments of records in matters of substance, and the amendment here is of the very essence of the conveyance itself. And it is true that the court, in a proper case, and on notice to the opposite party, will permit the sheriff to amend his return. O'Connorv. Wilson, 57 III. 226. But we are aware of no statute or common-law practice which authorizes or in any manner sanctions the right of justices of the peace to amend their records after they have once been made. To allow a justice to make alterations and changes in his records, at will and according to his whim, would be fraught with evil and wrong that would be oppressive. Such a power has not been entrusted to the higher courts, and cannot be exercised by these inferior jurisdictions." The Court further observed that the failure of the officer to properly take and certify the probate may seriously affect the rights of parties, "but that is no ground for violating rules that have governed the purchase and sale of real estate from the organization of our State," and that the defendant must be left to any other remedy he may have in law or equity, if he has any. It was finally held that the deed, the certificate to which was altered, was improperly read in evidence, and for that reason the judgment was reversed. We have a provision in our law (Code, sec. 1266; Rev. 1081; C. S. 3321) for correcting errors in the registration of instruments, but it requires notice and a hearing before any material correction is made therein.
In a case like ours, where the amendment of the certificate is fraught with such grave consequences, the well settled rule as to notice and hearing should not be departed from. For these reasons we have reached the conclusion that the evidence as to the new certificate, and also the other evidence relating to it, and the alteration of the first certificate, was properly excluded by Judge McElroy at the trial of the case.
We again direct particular attention to the fact, before closing, that the justice admitted, when examined by the judge, that (507) "he made no attempt to find the facts and adjudge the matters as required by Rev. 2107 (C. S. 2515), and was not even aware of its existence, and his evidence substantially amounts to no more than this, that if he had known of the law, he would have found the facts and his conclusions thereon and stated them in the original certificate. As said *Page 544 
by Justice Allen, in Butler v. Butler, supra, at pp. 588 and 589, "The remainder of the certificate of that date (1912) is in regular form, and gives evidence of the acts of an official of some experience, and if he then knew that it was necessary to adjudicate that the conveyance was not unreasonable, and not injurious to the wife, and he did so adjudicate at that time, he would have included it in his certificate." The fact that this was not done is strong proof that he is mistaking his findings of 1921 for those which he should have made in 1917, but which he evidently did not make, as the law required, and insert in his certificate. If he did find the facts, why did he do so, if he did not know it was necessary to consider the matter? The evidence, viewed as a whole, is entirely of too unsatisfactory a character to induce a court to act upon it, and reform as solemn an instrument as the acknowledgment and private examination of a married woman.
A full and exhaustive consideration of the general power of a justice, or probate officer, to materially alter his certificate once given and upon which the deed has been registered, will be found in Griffin v. Ventress,91 Ala. 918 (24 Am. Reports 918).
As defendant relied entirely on the validity of the deed in question, and it being invalid as to Mrs. Beaver, he acquired no title to it under the deed, and consequently none under Mr. Beaver's will, the title remaining in Mrs. Beaver, because the deed not having been executed and probated properly was void as to her. Kearney v. Vann, 154 N.C. 311; Wallinv. Rice, 170 N.C. 417; Butler v. Butler, 169 N.C. 584; Foster v. Williams,182 N.C. 632.
It must be understood that we confine our decision strictly to the grounds stated in it, and it should not be construed as covering the general and broader question as to whether the certificate of a justice, as probate officer, can be materially amended after it has been completed and passed from his possession, and the deed has been registered upon it. We decide the case on other grounds.
There was no error in the rulings and judgment of the court, and it will be so certified.
No error.
Cited: Whitten v. Peace, 188 N.C. 302; Best v. Utley, 189 N.C. 361;Caldwell v. Blount, 193 N.C. 562. *Page 545 
(508)