MATTIE LONG et al. v. W. S. RANKIN, Adm'r of Susan Bell.

*Consideration— Contract—Married   Women—Separate   Estate.*

1. The note of a married woman being void, a promise to pay the same after discoverture must be founded upon a new consideration, or the original transaction must have been of such a character as to have constituted an equitable charge upon her separate estate.

2. Where the husband voluntarily paid off anti-nuptial indebtedness of the wife and advanced money for the improvement of her sepa-rate estate, taking only her promissory note for such advances: *Held*, that the general separate real estate was not thereby charged: *Held*, also, that the general separate personal estate would have been charged by the necessary implication growing cut of the beneficial consideration, but the existence of such sepa-rate personal estate not being shown, there was no charge upon the general separate estate which the husband could have created, and, therefore, no consideration for the promise made after disa-bility removed.

3. Where it was alleged that the wife conveyed her land to the husband, who was to make such advances, and he re-conveyed to her upon her executing a note to pay for the same: *Held*, that in order to charge the land with such advances upon the repudiation of such note as a valid obligation, equity requires that the exceptional circumstances under which she alone could have conveyed to her husband should be shown.

CIVIL ACTION, tried before *Whitaker, J.,* upon complaint and demurrer, at February Term, 1891, of HALIFAX Superior Court.

The plaintiffs alleged—

\*          \*          \*          \*          \*          \*          \*

3. That on the 18th day of March, 1887, Susan J. Bell executed to the plaintiffs her promissory note, whereby she promised to pay the plaintiffs, on demand, fifteen hundred dollars, with interest at six per cent. from date.

4. That no part thereof has been paid.

5. That prior to said time, the said Susan J. Bell had conveyed to her husband, David B. Bell, one-half interest in the Gibson Hill gold mine tract of land in Guilford County, upon the understanding that if the same was not sold it should be re-conveyed to said Susan upon her repaying to said Bell all amounts paid out by him on account thereof, and moneys advanced by him for the improvement of her separate estate, and the payment of certain debts contracted by her before her marriage with him    During the last illness of said Bell, the said Susan demanded that he re-convey said land to her, and the said D. B. Bell then showed to her a statement of the amounts paid out and advanced by him as aforesaid, aggregating $1,500, and agreed to reconvey said land if she would execute the aforesaid note to the plaintiffs. This was agreed to, and thereupon the said note was executed and delivered, and the said Bell executed a deed of re-conveyance to his said wife.    After the death of the said D. B. Bell, Mrs. Bell took said note for safe-keeping, representing to the plaintiff Mattie Long that she was fearful it would fall into the hands of some one else, and then and there she promised to pay the same.

Thereafter she declined to surrender the note, but promised to pay it.

Wherefore, the plaintiffs pray judgment for fifteen hundred dollars, with interest thereon, and for other and further relief, &c.

The defendant demurred, and alleged as grounds of demurrer that the complaint does not state a cause of action, in this—

1. First, that it does not appear on the face of the complaint that the contract, specified as being entered into by Susan J. Bell, his testatrix, with the plaintiffs, was made. with the written consent of her husband, D. B. Bell; second, or that said contract was made for the necessary personal expenses of said testatrix, or for the support of her family, or in order to pay her debts existing before marriage with D. B. Bell, or that she was a free trader.

2. That it does not appear that the debt secured .by the note of the testatrix was specially charged on the separate estate and property of the testator at or before the execution thereof.

3. That the complaint fails to allege the existence of a separate estate in the said *feme,* and instead of seeking to charge a particular fund, seeks to charge the said *feme* personally.

4. That the complaint fails to allege that the said contract with the plaintiffs was for the personal benefit of said *feme,* or some advantage to her separate estate.

5. That the alleged promise by said *feme* to pay said note since the death of her husband is of no validity, as said note and contract was void in its incipiency, and forms no consideration to support said promise.

*Mr. R. O. Burton, Jr.,* for plaintiff.
*Mr. Thos. N. Hill,* for defendant.

SHEPHERD, J.: As the complaint does not distinctly allege the existence of any separate estate (*Doughtery* v. *Sprinkle,* 88 N. C., 300), and the action is not brought for the purpose of subjecting the same to an equitable charge, but is grounded upon the alleged legal obligation incurred after discover-

ture, the only question which we can consider is the sufficiency of the consideration to support the promise sued upon. The note was unquestionably void when executed, and there was no new consideration subsequent to the removal of the marital disability, as in *Bank* v. *Bridgers*, 98 N. C., 67.

. It is well settled that a mere moral consideration will not support a promise (*Puckett* v. *Alexander*, 102 N. C., 95), but "a qualification to this rule, however, obtains in cases where there was originally a sufficient valuable consideration upon which action could have been sustained, but where in consequence of some statute or positive rule, growing out of general principles of public policy, the right of action is suspended and the party exempted from legal liabilty. In such cases, the moral obligation is sufficient to support an express promise, though it will not raise an implied promise. * * * This exception includes all promises barred by the statute of limitations or discharged by the bankrupt or insolvent law, and promises by an adult to pay debts contracted during his infancy." Story on Contracts, 466.

Whether such a promise made by a married woman after discoverture to pay a debt contracted during coverture falls within the limit of the above qualification, has been the subject of much anxious consideration and many conflicting decisions. The distinction taken is that the contracts of a married woman being originally *void* cannot support a subsequent promise, even though she has derived a benefit therefrom. *Puckett* v. *Alexander*, *supra* , citing *Wennall* v. *Adney*, 3 Bos. and Pul., 252.

This distinction as to void contracts is recognized in this State, and is undoubtedly sustained by the weight of authority. We hold, however, that although in the case of a *feme covert* her contract is void, yet if the transaction is of such a character as to have subjected her separate estate to an equitable charge during coverture, it will be recognized in a

court of law as a sufficient consideration to sustain a promise made after disability removed. *Felton* v. *Reid*, 7 Jones, 269.

Our case, then, turns upon the question whether from the facts alleged the husband during the coverture had any equitable rights which he could have asserted against the separate estate of the wife.

It is the duty of a party seeking to subject such estate to set forth his grounds with particularity, and the Court should not be left to mere inference or conjecture as to the existence of any element which is essential to constitute such a charge. We will first consider whether the general separate estate was chargeable with the alleged advances of the husband. It is well settled that the separate real estate cannot be thus charged except by deed and privy examination (*Farthing* v. *Shields*, 106 N. C., 289; *McMillan* v. *Gambill*, 106 N. C., 359, and the cases there cited), and that the separate personal estate cannot be charged unless it is expressly done by the instrument evidencing the obligation, or unless such a charge arises by necessary implication growing out of a beneficial consideration. *Flaum* v. *Wallace*, 103 N. C., 296. As there is nothing to show that the wife was possessed of a separate personal estate (the language of the complaint strongly implying that her property consisted of realty alone), and there being no deed or privy examination, we are unable to see how the husband could have asserted his claims against the general separate estate. If, however, a separate personal estate had been alleged, we think from the facts stated that it would have been charged by the necessary implication arising from the nature of the consideration. It is further insisted that the husband could have charged the particular land mentioned with the amount included in the note on the principle laid down in *Hinton* v. *Ferrebee* (decided at this term), *Burns* v. *McGregor*, and other similar cases. There can be no doubt that where a conveyance has been made in

108—22

consideration of the concurrent performance of a particular act, equity will not permit the grantee to hold the fruits of the transaction and refuse to perform his part of the agreement. But it is contended that this principle does not apply here, because the wife, by executing the note, performed the only act agreed upon as a prerequisite to the reconveyance of the property. Conceding, for the sake of the argument, that this view is the result of too refined a construction of the real agreement of the parties, we are met with a very serious objection, which goes to the root of the plaintiff's equity as to the land in question. The objection is that the plaintiff has not shown that he ever acquired any title from his wife. Ordinarily, where a conveyance of a *feme covert* is alleged, it will be presumed, upon demurrer, that it is valid and effective, but where a conveyance by the wife to the husband is made the basis upon which equitable relief is asked, the rule is different, on account of her general legal incapacity to make such a conveyance (*Simms* v. *Ray,* 96 N. C., 87), and it is therefore necessary that it should affirmatively appear, in a case like the present, that the provisions of *The Code,* §§ 1835, 1836, have been strictly complied with, or that the title has been acquired in some other exceptional manner.

As we are not at liberty to assume that the conveyance was executed so as to bring it within any exception to the general law, we cannot see from the complaint how the husband could have availed himself of the principle above mentioned.

Our conclusion then is, that upon the rather general statements in the complaint, the husband had no equitable rights which he could have asserted against the wife, and that there was therefore no consideration for the promise upon which this action is founded.

Affirmed.