JOHN J. BUTLER ET AL. v. P. D. BUTLER.

(Filed 13 October, 1915.)

**1. Deeds and Conveyances—Husband and Wife—Deed of Wife—Contracts— Special Probate—Interpretation of Statutes—Constitutional Law.**

Revisal, section 2107, requiring that contracts made between husband and wife for a longer period than three years, and which affect or change any part of the real estate of the wife, shall be in writing, duly proved as required for conveyance of land, that the examination of the wife, separate and apart from her husband, etc., shall be taken, with the further certificate of the probate officer that it appears to his satisfaction that the wife freely executed such contract and freely consented thereto at the time of her separate examination, and that the conveyance is not unreasonable or injurious to her, is constitutional and valid, including within its terms and meaning a conveyance of lands by the wife to the husband; and therefore such conveyance without compliance with the statutory requirement that the probate officer certify that it "is not unreasonable or injurious to her" is void.

**2. Same—Amended Certificate.**

Where it appears that the probate officer of a conveyance of land made by the wife to the husband has omitted to certify that the conveyance was not unreasonable or injurious to her, and after the death of the wife seeks to correct the certificate by a further certificate stating that "it does appear to my satisfaction that the said conveyance is not unreasonable or injurious to her," the latter certificate speaks as of the time it was made, and it is *Held*, the second certificate was not an attempt to amend the first one by a statement of fact then existing, but a new and original certificate, which could not give vitality to the deed of the wife.

**3. Deeds and Conveyances—Essentials—Delivery—Husband and Wife— Special Certificate—Interpretation of Statutes.**

A deed passes no title to land unless delivered in the grantor's lifetime, and it must be complete at the time of delivery; and where a deed to lands from the wife to her husband has not been properly probated before her death under the provisions of Revisal, section 2107, the probate may not thereafter be amended so as to make the conveyance a valid one which otherwise is void.

**4. Deeds and Conveyances—Husband and Wife—Special Probate—Interpretation of Statutes.**

Chapter 109, Public Laws of 1911, known as the Martin Act, by express terms is made subject to the provisions of section 2107 of the Revisal, and the construction of that section, that it includes within its terms conveyances of land by the wife to the husband, making the special certificate of the probate officer necessary to the validity of such deed, is not affected by the act of 1911.

WALKER, J., concurring in result; CLARK, C. J., dissenting.

APPEAL by defendant from *Whedbee, J.,* at the March Term, 1915, of GATES.

Action to recover land. The plaintiffs are the devisees of Nancy Butler, and the defendants are the devisees of David Butler, her husband. Nancy Butler was the owner in fee of said land prior to

3 August, 1912, and on that day undertook to convey the same to her said husband, David Butler, by deed which was duly acknowledged and the private examination properly taken, except that John J. Gatling, justice of the peace, who took said probate, failed to certify that said conveyance was not unreasonable and not injurious to the wife. Both Nancy and David Butler died prior to 25 March, 1915, Nancy having died first.

When the case was called for trial, and as soon as the plaintiffs had announced their readiness, counsel for the defendant stated to the court that the controversy would depend upon the construction of a certain deed, with probate, from Nancy Butler to her husband, David Butler, and the plaintiffs' counsel agreed to that proposition. It was thereupon made to appear through counsel for the defendant that on the morning the case was called for trial the defendant, without any notice to or knowledge of the plaintiffs or their counsel, had secured from J. J. Gatling, who is still a justice of the peace in Gates County, a new certificate and had had the deed with this new certificate reregistered in Book No. 68, page..., in the register of deeds' office of Gates County. The new certificate and probate are as follows:

CERTIFICATE OF JOHN J. GATLING.

NORTH CAROLINA—Gates County.

I, John J. Gatling, a justice of the peace for the said county, hereby certify that Nancy Butler on 3 August, 1912, personally appeared before me, and duly acknowledged the execution of the foregoing deed, and she, the said Nancy Butler, being by me privately examined, separate and part from her said husband, David Butler, touching her voluntary execution of the same, doth state that she executed the same freely and voluntarily, without fear or compulsion on the part of her said husband or any other person, and that she doth still voluntarily assent thereto.

I further certify that upon said examination, and upon a careful examination of the facts, causing the said execution, it doth appear to my satisfaction that the said Nancy Butler freely executed the said deed and freely consented thereto, at the time of her said separate examination, and that the said conveyance is not unreasonable or injurious to her, the said Nancy Butler, which said conclusion I hereby certify as having been duly and carefully made concerning all the facts surrounding the execution and cause thereof.

Witness my hand and seal, this 25 March, 1915.

(Seal)    JOHN J. GATLING,
                    Justice of the Peace.

The court held as matter of law that the deed as first certified, probated and recorded was void and passed no title. The defendant ex-

cepted. The court further held, under the facts as stated, the deed with the new certificate and probate passed no title. Defendant excepted. The court rendered judgment in favor of the plaintiffs, to which defendant excepted and appealed.

*Smith & Banks and Ehringhaus & Small for plaintiffs.*
*A. P. Godwin and Ward & Grimes for defendants.*

ALLEN, J. It is provided by section 2107 of the Revisal that "no contract between a husband and wife made during coverture shall be valid to affect or change any part of the real estate of the wife or the accruing income thereof for a longer time than three years next ensuing the making of such contract, . . . unless such contract shall be in writing and be duly proved as is required for conveyances of land; and upon the examination of the wife, separate and apart from her husband, as is now or may hereafter be required by law in the probate of deeds of *femes covert,* it shall appear to the satisfaction of such officer that the wife freely executed such contract and freely consented thereto at the time of her separate examination, and that the same is not unreasonable or injurious to her."

This statute has been held to be constitutional in *Sims v. Ray,* 96 N. C., 87; *Long v. Rankin,* 108 N. C., 337; *Kearney v. Vann,* 154 N. C., 319, and at the last term the deed of a wife to her husband, duly acknowledged and with private examination properly certified, was held invalid in *Singleton v. Cherry,* 168 N. C., 402, by the unanimous opinion of the Court, because of the fact that the officer taking the probate failed to certify that the making of the deed was not unreasonable and not injurious to the wife.

The Court said in the first of these cases: "It will be seen from a glance at the deed from Mary Ray to the defendant (her husband) that the requirements of the statute have not been observed. There is no finding that the execution of the deed is not unreasonable or injurious to the wife, and no conclusion in relation thereto certified by the officer. Our conclusion is that the deed from Mary Ray to the defendant is not valid"; in the second, "Ordinarily, where a conveyance of a *feme covert* is alleged, it will be presumed, upon demurrer, that it is valid and effective, but where a conveyance by the wife to the husband is made the basis upon which equitable relief is asked, the rule is different, on account of her general legal incapacity to make such a conveyance (*Sims v. Ray,* 96 N. C., 87), and it is therefore necessary that it should affirmatively appear, in a case like the present, that the provisions of the Code, secs. 1835 and 1836 (now Rev., sec. 2107), have been strictly complied with," and in the last, "The other deed of Cornelia Cherry to her husband, under which the defendants claim, has the ordi-

nary privy examination in due form, but the provisions of Revisal, section 2107, have not been complied with. This section requires certain findings and conclusions of the probate officer to be made with reference to contracts between the wife and husband in relation to her separate property. While the act of 1911, chapter 109, known as the Martin Act, provides that a married woman may contract and deal so as to affect her real and personal property as if she were a *feme sole,* it excepts contracts between herself and her huband. We are of opinion that in a conveyance of the landed estate of a wife by herself to her husband, the requirements of section 2107 must be observed."

The earliest of these decisions was written in 1887, and the latest six months ago, and they cannot be said to be the utterances of judges who belonged to a ruder age and who believed in the incompetence of woman.

Rather let it be said that these judges, recognizing the gentler qualities of woman, and knowing how she may be influenced to her own hurt when her affections are enlisted, have determined to give force and vitality to a statute designed, not for her enslavement, but for her protection.

These cases also hold that deeds are embraced in the term "contracts" used in section 2107 of the Revisal, but it ought not to require citation of authority to show that a deed is an executory contract until delivered, and that after delivery it becomes an executed contract.

The case of *Rea v. Rea,* 156 N. C., 526, has never been an authority for the position that the section of the Revisal (2107) does not include deeds, because there were two dissenting judges, and *Associate Justice Walker,* who concurred in the judgment, did so upon the distinct ground that the subject-matter of the action was a gift of personalty, and therefore not a contract, and he clearly recognized the application of the statute to deeds from the wife to the husband.

That this is the correct view of the case is put beyond question by the decision in *Singleton v. Cherry, supra,* where the Court said, all the members agreeing thereto: "It is a mistake to suppose that the case of *Rea v. Rea,* 156 N. C., 530, relied upon by the defendant, applies to the facts of this case, or is any authority that, in the conveyance of real property by the wife to the husband, the provisions of the statute, Revisal, 2107, are dispensed with."

The Martin Act, chapter 109, Public Laws of 1911, has no bearing upon the question before us, because it is written in the face of the act that it is subject "to the provisions of section 2107 of the Revisal," and this is also held in the *Singleton case,* in which the Court said, speaking of a deed from wife to husband: "We do not think that the Martin Act intended, in such a transaction between the husband and

wife, that the safeguards provided by the statute for the protection of married women should be set aside."

It would seem, therefore, that the validity of the statute as a constitutional exercise of legislative power and its application to deeds cannot be further questioned, and if valid, the paper-writing relied on by the defendants as a conveyance, standing alone on the certificate of probate of 1912, has no legal effect, as there is no finding by the officer purporting to take the probate that the conveyance is not unreasonable and not injurious to the wife.

The learned counsel for the defendant concede this to be true, but insist that the certificate of 1915 complies fully with the statute, and that it cures the defect in the certificate of 1912.

There is much conflict of authority as to the power of a judicial officer to amend his certificate of probate after the instrument he is probating has passed from his hands, but it seems that the weight of authority is against the exercise of the power. (1 Devlin on Deeds, sec. 539 et seq.) and all agree that it is a power fraught with many dangers. The higher judicial tribunals are not permitted to correct their records without notice to the parties and without an opportunity to be heard, and if the position of the defendant can be maintained, a justice of the peace, who has no fixed place for the performance of his official duties, may at any time, and when parties cannot be heard, change his certificate of probate and materially affect the titles to property.

Counsel for plaintiff and defendant in this case bear testimony to the high character of the justice of the peace who made the certificate of 1912 and 1915, but we are dealing with a principle that affects all judicial acts relating to probates, and not with his acts alone. If, therefore, we were inclined to admit that the power exists, we would not recognize it except when it is made clearly to appear that the later certificate was merely reducing to writing in the form of a certificate his official acts done at the time of the completion of the first certificate, and this does not appear from the certificate of 1915.

On the contrary, he does not confine his certificate and adjudication to the examination of the wife separate and apart from her husband, as required by the statute, but he relies also upon an examination of all the facts surrounding the execution of the deed, without stating that he ascertained these facts in 1912, and concludes that "it doth appear to my satisfaction that the said conveyance is not unreasonable or injurious to her." When does this appear and when does he conclude that the conveyance is not unreasonable or not injurious? The language deals with the present and not with the past, and the natural construction is that he reached this conclusion at the time of making his certificate on 25 March, 1915. If not, why was not this included in the certificate of 1912? The remainder of the certificate of that date is in regular

form, and gives evidence of the acts of an official of some experience, and if he then knew that it was necessary to adjudicate that the conveyance was not unreasonable, and not injurious to the wife, and he did so adjudicate at that time, he would have included it in his certificate.

We therefore conclude that the certificate of 1915 is not an attempt to amend the certificate of 1912, and that it is a new and original certificate, and as such it can give no force and vitality to the deed because, if otherwise valid, both the grantor and the grantee were then dead. *Neal v. Nelson,* 117 N. C., 406; *Thompson v. Lumber Co.,* 168 N. C., 229.

A deed passes no title unless delivered in the lifetime of the grantor (1 Devlin on Deeds, sec. 260), and it must be complete at the time of delivery. 1 Devlin on Deeds, sec. 310; *McKee v. Hicks,* 13 N. C., 379.

Affirmed.

WALKER, J., concurring in result: My opinion is that the second certificate does, by fair implication, state that all the information upon which the justice proceeded in making it was acquired by him upon the privy examination of the wife. He does not say, nor does he use any language which, if properly construed, implies as much, that he was certifying as to the facts which he learned outside said examination. The mere added expression, "and upon a careful examination of the facts," following the words, "I further certify that upon said examination," plainly mean the facts disclosed by such examination, unless we extend the meaning beyond what the words will justify. If we say that we have examined the record in a case, "and upon a careful examination of the facts," which is not an unusual expression with us, we always mean the facts as shown in the record.

There is nothing there to indicate that we searched outside the record for other facts, and nothing here that implies that the justice gathered facts not appearing at the examination of the woman. But while I hold this view as to the meaning of the certificate, nevertheless, after careful and deliberate examination of the law, my conclusion is that the justice had no authority to change his certificate. The trend of opinion as stated by the text-writers, and in a large majority of the cases, is steadily set against the exercise of any such power, as being both unusual in practice and pernicious in its consequences. The rule is well stated in *Elliott v. Lessee of Peirsol,* 1 Peters (U. S.), 328 (7 L. Ed., 164): "Had the clerk authority to alter the record of his certificate of the acknowledgment of the deed at any time after the record was made? We are of the opinion he had not. We think he acted ministerially, and not judicially, in the matter. Until his certificate of the acknowledgment of Elliott and wife was recorded, it was, in its nature, but an act *in pais,* and alterable at the pleasure of the officer.

But the authority of the clerk to make and record a certificate of the acknowledgment of the deed was *functus officio* as soon as the record was made. By the exertion of his authority, the authority itself became exhausted. The act had become matter of record, fixed, permanent, and unalterable; and the remaining powers and duty of the clerk were only to keep and preserve the record safely. If a clerk may, after a deed, together with the acknowledgment or probate thereof, have been committed to record, under color of amendment, add anything to the record of the acknowledgment, we can see no just reason why he may not also subtract from it. The doctrine that a clerk may at any time, without limitation, alter the record of the acknowledgment of a deed made in his office would be, in practice, of very dangerous consequence to the land titles of the county, and cannot receive the sanction of this Court." The cases to the same effect are numerous. *Durham v. Stephenson*, 41 Fla., 112; *Bours v. Zachariah*, 11 Calif., 281; *Merritt v. Yates*, 71 Ill., 636; *Bank v. Paul*, 75 Va., 594 (40 Am. Rep., 740); *Newman v. Samuels*, 17 Iowa, 528; *Elwood v. Klock*, 13 Barbour (N. Y.), 50; *Wedel v. Herman*, 59 Calif, 507. There is a valuable note to the case of *Jordan v. Corey* (2 Ind. 385), in 52 Am. Dec. (Extra Anno.), at pp. 519, 520, 521, which was written by *Judge Freeman*, and where he says: "Whether the act of the officer who takes an acknowledgment be regarded as a judicial or a ministerial one, there seems to be no good reason why he should not be allowed, within reasonable limits, to amend his certificate so as to make it speak the truth and conform to the actual fact. The power to amend is freely exercised in many analogous caes, and it is not easy to see why it should be permitted in this. Be this as it may, it must be admitted that the greater weight of authority is on the other side of the question." He then collects the cases and shows that the decided weight of authority is the other way, notwithstanding his own view of the subject. By reference to 1 Am. and Eng. Enc. (2 Ed.), at pp. 552, 553, and notes, it will be found that the case of *Jordan v. Corey*, on which the contrary doctrine seems to rest, has been disapproved by the other courts as being wholly unsupported by reason, or by precedents elsewhere.

A similar decision to that of *Jordan v. Corey* was made in Missouri (*Wannall v. Kem*, 51 Mo., 150), but was afterwards disapproved and overruled by the same Court in *Gilbraith v. Gallivan*, 78 Mo., 456, and also unfavorably considered in *Griffith v. Venters*, 91 Ala., 366 (24 Am. St. Rep., 918).

The justice or notary has been allowed by some courts to amend, or rather *perfect*, which is a better word, his certificate by signing his name, which he had omitted to do, or by affixing his official seal, where it had not been done at the time of making his certificate. *Harmon v. Magee*, 57 Miss., 415. But it will be seen that this is merely a formal

defect and did not contradict or otherwise substantially affect the body of the certificate. It was merely something necessary to complete the act of certification, and its omission was manifestly an inadvertence. We permitted a similar act to be done by an officer in the probate of a deed in *Sellers v. Sellers,* 98 N. C., 13. It may be that if no certificate had been made at all, or an incomplete one, that is, one lacking in some essential formality, but not affecting the substance or facts certified or their legal significance, the officer might supply what is missing. This, though, is not our case.

We know that, anciently, such acknowledgments of married women could only be taken in open court and entered on its records in proceedings somewhat tedious, intricate, and attended with much expense, form and ceremony, by the procedure of fine and recovery, this being one of the methods of barring the wife's dower. 2 Lewis's Blackstone, page 136. And by our statute the privy examination, duly taken according to the statute and by the proper officer, once had the conclusive force and effect of a fine and common recovery. Rev. Stat., ch. 37, sec. 9; *Jones v. Cohen,* 82 N. C., 75; *Ware v. Nesbit,* 94 N. C., 664, and though the law has been somewhat modified in this respect, the private examination of the wife still is binding upon her, and will pass her dower or other interest in the land described in her deed, if regularly acknowledged by her husband and herself with her proper privy examination. Rev. Code, ch. 37, sec. 8; Revisal of 1905, sec. 952, and such privy examination, even at the present, precludes investigation as to fraud, duress or undue influence in the treaty against an innocent purchaser for value; and also shuts off inquiry into fraud or falsity in the examination itself, unless supported by strong, clear, and convincing proof. Revisal, sec. 956; *Lumber Co. v. Leonard,* 145 N. C., 339.

It was a long time before the Legislature would dispense with the old procedure, and substitute one less formal and solemn, but it finally did so, and now justices of the peace and other enumerated officers have been intrusted with this important duty and power to take and certify such acknowledgments and privy examinations, and when it is done in conformity with the statute the act is clothed with the same force and effect formerly produced by the judgment of a court of record, but it was not intended by this radical change in ceremony that the proceeding, which is now authorized, should be regarded as of less moment than anciently, or that it should be left to the loose and uncertain action or conduct of careless or unskillful persons.

The formalities of the law should be just as punctiliously observed now as before the change, and I do not see why, when the officer has acted and recorded what he has done, he should be permitted to reopen the matter and alter the facts, or impart new life or validity to the record he has made, if imperfect, without the consent of the parties,

or why the court should require him to do so without notice and opportunity to be heard being given to all parties concerned. If his certificate is not technically to be considered as a judicial record, it is, at least, a *quasi* one. It was said in *Bours v. Zachariah,* 11 Calif., 281, 70 Am. Dec., 779 : "The certificate of a notary public to a deed is not an act *in pais,* which he may exercise by virtue of his office at any time while in office; he derives his power from the statute, acts under a special commission for that particular case, and after taking the acknowledgment and making and delivering the return, his functions cease, and he is discharged from all further authority, and cannot alter or amend his certificate. *Mr. Justice Baldwin,* who delivered the opinion in that case, thus referred to the principal case : 'We do not deem it necessary to criticise the case of *Jordan v. Corey* in 2 Carter's Indiana Reports. That case we think wholly unsupported by authority.' " And in *Enterprise Transit Co. v. Sheedy,* 103 Pa. St., 492 (49 Am. Dec., 130), it was held : "This attempt to impart life to a void instrument has the merit of novelty. When Mrs. Sheedy affixed her name to the written instrument and acknowledged it, the acknowledgment was confessedly so defective as not to bind her or pass her title to the land. It was then delivered, and eleven days thereafter recorded. More than five months after the acknowledgment was actually taken, and the certificate thereof, signed by the notary public, indorsed thereon, he wrote and signed a second certificate of acknowledgment. The parties to the instrument did not again come before him, but he certifies what occurred months before. To this last certificate he adds facts not contained in his former certificate, with a view and for the purpose of making valid the writing of a married woman which was then invalid. Effect cannot be given to this latter action of the notary public." Citing many cases. See, also, *McMullen v. Eagan,* 21 W. Va., 233.

The doctrine is strongly stated in *Merritt v. Yates,* 71 Ill., at p. 639 : "But we are aware of no statute or common-law practice which authorizes, or in any manner sanctions, the right of justices of the peace to amend their records after they have once been made. To allow a justice to make alterations and changes in his record at will and according to his whim would be fraught with evil and wrong that would be oppressive. Such a power has not been intrusted to the higher courts, and cannot be exercised by these inferior jurisdictions."

It may be admitted that whenever substance is found in a certificate of acknowledgment, obvious clerical errors and all technical omissions and effects will be disregarded, and, in order to uphold it, the certificate will be read in connection with the instrument, and in the light of the surrounding circumstances (*Morse v. Hewett,* 28 Mich., 481; *King v. Merritt,* 67 Mich., 194), a proposition in support of which numerous authorities are collected in the case last cited, but that is very far from

saying that a probate officer may alter his certificate in matters of sub-
stance affecting the validity of his action in the premises. It is true
that it is said by *Judge Mitchell* so recently as 1889, in *Westhafer v.
Patterson,* 120 Ind., 459 (16 Am. St. Rep., 330), that "assuming that
the officer before whom the deed was acknowledged did his duty, and
examined the wife separate and apart from her husband, it would fol-
low that the informality in the certificate was the result of a mere
clerical omission, which might be corrected on proper application."
But a close examination of the case will disclose that the Court was
referring in that connection to a mere informality.

We may well refer to what is aptly said in *Gilbraith v. Gallivan,* 78
Mo., at p. 455, after stating the fact that a perfect certificate was sub-
stituted for the original, which was erased: "If we assume this last
certificate as true, and stating the facts as they occurred, it is plain
that the notary, at the date of his examination and certificate, was
perfectly aware of what was required by the statute." This being so,
it shows the danger in allowing the probate officer to trust to his
memory of the events or facts long after the examination was taken,
rather than require that what he has certified or recorded when the
facts were fresh in his mind shall stand, unless altered, at least, after
full investigation, upon notice to the interested parties. My conclu-
sion, therefore, is that it is safer to deny to the officer this power of
correction, so as to change the substance of the certificate, upon the
grounds:

1. That it would be against a sound public policy to thus open the
door to collusion and fraud, or to leave the matter to the uncertain
and often unreliable memory of an officer, or to his unrestrained discre-
tion, to materially change the substance of the certificate, either for
the purpose of validating or invalidating the deed.

2. It would violate the cardinal principle or maxim of the law, that
a party is entitled to a notice, and a hearing before his rights are
altered to his prejudice. It should, therefore, be entrusted to the
court, where an investigation of an adjudication upon the facts can be
made, after notice and an opportunity for a hearing, rather than to the
arbitrary will or even judgment of the officer who took the acknowl-
edgment and conducted the privy examination.

If we should permit the justice, or other probate officer, to change
the facts recited in the certificate at his will, however honestly he may
act, titles to land would rest, in many cases, not upon the recorded evi-
dence of them, or upon any sure foundation, but would depend, in many
instances, upon the future and uncertain action of the officer, either to
validate or invalidate them, rendering them very precarious. This
would shake the confidence of the people in land titles and might prove

38—169

to be very disastrous. In this case, the only witness who could contradict the officer as to the facts is dead, and it, therefore, furnishes a striking example of the unwisdom of any such rule as will permit him to change the facts stated in his certificate, attached to the deed, after the delivery to the grantee.

I may add that in this particular case it appears that there was no actual misstatement of the fact as to what the justice really did, or, at least, that there is no suggestion of such a thing or of any fraud or collusion. But the question is not what the fact is, in the instant case, but what is the law, as applicable to all cases, the object of which is to guard against any wrong influences calculated to prevent or pervert justice, or to take away a person's rights without a hearing.

Some of the cases hold that a court of equity will not correct a mistake of this kind, but that the court, after such facts have been ascertained by judicial investigation, as will justify it, may require the offi-· cer to do so by its mandatory process. But this question is not now before us.

I fully concur in the position taken by the Court in its opinion, that this transaction is subject to the provisions of Revisal, sec. 2107, and the case has been discussed by me upon this hypothesis. A deed from the wife to her husband for her land is certainly a contract which "affects or changes her estate," within the meaning of that section.

CLARK, C. J., dissenting: The deed in question was signed by Nancy Butler, the owner in fee of the land, and her acknowledgment and privy examination were duly taken. Later the justice of the peace finding that he had omitted to certify, as he mistakenly thought Rev., 2107, required, that "the conveyance was not unreasonable or injurious to her," amended his certificate to embrace such finding before any rights had accrued to purchasers or others for valuble consideration. This finding was necessarily based on the original examination, for Mrs. Butler was dead when the amendment was made.

It would seem that this should cure any defect, if there had been any. It is common knowledge that, especially prior to the passage of the Connor Act, as to a large number of deeds, there were defects in the privy examination or acknowledgment which were cured in this way. This was consonant with justice, and if called in question, even now, would shake many titles unless protected by the lapse of time.

But for a far stronger reason this title is valid. The belief held by men in a ruder age of the incompetence of women, and especially of married women, leading in the growing enlightenment of a politer and juster age, to sharp differences, the matter was settled in this State, as it has been in all others, by constitutional or statutory measures. In our State the Constitution of 1868, Art. X, sec. 6, provides:

"The real and personal property of any female in this State, acquired before marriage, and all property, real and personal, to which she may, after marriage, become in any manner entitled, shall be and remain the sole and separate estate and property of such female, and shall not be liable for any debts, obligations or engagements of her husband, and may be devised and bequeathed and, *with the written assent of her husband, conveyed by her as if she were unmarried.*"

It cannot be questioned that if Mrs. Butler had been single at the time of this conveyance to the man who was her husband, the deed would have been valid. This conveyance, therefore, must be valid, when made to the same man, for she had a constitutional right to "convey it as if unmarried." The devise of it thereafter by her husband was his written assent in the most formal manner.

We are citd to *Kearney v. Vann,* 154 N. C., 311, in which it was held by a divided Court that the amendment to Rev., 2016, which gave a lien on the property of a married woman for buildings, or repairs thereto, put on her land, with her consent or procurement, because she should (said the act) be "deemed to have contracted for such improvement," should not be such lien where she contracted with her husband to make such repairs and a material man had furnished the material through him. This amendment had been passed to change the ruling which had been made in *Weir v. Page,* 109 N. C., 220, and like cases. The decision in *Kearney v. Vann, supra,* materially restricted the effect of the amendment, but it was put upon the ground that it should be read in connection with section 2107, which restricted the right of a married woman to *contract* with her husband, without the certificate of a justice of the peace. That decision, therefore, dealt solely with *contracts* between husband and wife, and not with reference to conveyances, which are not mentioned in section 2107.

In *Rea v. Rea,* 156 N. C., 529, we have a thoroughly considered opinion (for two judges dissented), which held (pp. 531 and 532) that Rev., 2107, applied, as its terms expressly state, to *contracts* only, and not to conveyances, and that a gift to her husband by a married woman (if there is no fraud or duress) is valid. It would have been in violation of the Constitution to require for a deed by a married woman more than the constitutional "written assent of her husband," and the statute (Rev., 2107) does not require it. Besides, if it applied to conveyances, it would forbid all gifts by wives to husbands, for no justice could certify that such diminution of the wife's estate was "for her advantage." There is no statute forbidding a gift by the husband to the wife.

The objection to this deed cannot be sustained, for two reasons: Because the statute (Rev., 2107) does not require any certificate by the justice that the deed is for her benefit, and it would be contrary to the

Constitution if it did. That section applies only to *contracts,* and does not refer to *conveyances.* Every lawyer and, indeed, every man, whether lawyer or not, is presumed to understand that there is a wide distinction between contracts and conveyances. The object of the statute was to prohibit married women from assuming liability for their husbands, but we are not to presume that the Legislature intended to violate the Constitution by putting an inhibition upon their conveyances, when it does not use the word. The provision in the Martin Act, ch. 109, Laws 1911, authorizes married women to contract and deal so as to affect their real and personal property in the same manner and with the same effect as if they were unmarried. In *Council v. Pridgen,* 153 N. C., 443, the Court held that the Martin Act applied to contracts and not to conveyances. It is true, it still requires her privy examination, but if that provision is deemed valid, it is to be noted that the exception is only as to the privy examination, and the Martin Act does not purport to amend the Constitution by adding to it this additional requirement of the opinion of a justice of the peace.

This whole matter was thoroughly gone into in *Rea v. Rea,* 156 N. C., 530, which was fully considered by the Court, for each judge expressed his opinion.

The opinion in chief says: "If Rev., 2107, had included conveyances . . . it would have been invalid as to conveyances of realty, because requiring the assent of a third person over and above the 'written assent of the husband,' which is the only requirement of the Constitution, and an addition to the privy examination required by statute, which has been held a mere regulation and not a restriction upon the right of the woman to convey." It may be added here that this last proposition has often been dissented from as a violation of the Constitution, and was here only quoted as having been held. The opinion in *Rea v. Rea, supra,* further goes on: "In this case the husband actually witnessed the transfer in writing, which, under the authority of *Jennings v. Hinton,* 126 N. C., 51, is a sufficient compliance with the requirement of the written assent of the husband to conveyance of realty." Here the subsequent devise by the husband is certainly such written assent.

The opinion in *Rea v. Rea, supra,* further says: "In this case there does not appear to have been any consideration, and the assignment was not only a conveyance, but a gift. No magistrate could certify that a gift by a woman to her husband is for her benefit, or does not diminish her estate. It would be a startling proposition that a married woman who, by our Constitution, has as full control of her property as if unmarried, cannot make a present to her husband if she sees fit." This opinion, on pp. 531 and 532, fully discusses the proposition that Rev., 2107, applies only to *contracts* and not to conveyances, and that opinion was the opinion of the Court.

In *Rea v. Rea, Walker, J.,* concurring, says (p. 535), summing up the rights of a married woman:

"1. She may will her property without the consent of her husband, as if she was a *feme sole.* . . . 2. She may convey her real property, with the written consent of her husband *evidenced* by her privy examination. 3. She may dispose of her personal property by gift or otherwise without the assent of her husband, as if she were unmarried. *Vann v. Edwards,* 135 N. C., 661; Laws 1911, ch. 109. 4. By virtue of the Martin Act, Laws 1911, ch. 109, she may now contract and deal so as to affect her real or personal property in the same manner and with the same effect as if she were unmarried, unless the *contract* belongs to the class of those described in Rev., sec. 2107, or unless it is a conveyance of real property, when the formality is required by the existing law, for its validity must be observed. Those two cases being expressly excepted in the act of 1911."

By reference to said Rev., 2107, it will be seen that it refers only to *contracts,* and reference to Martin's Act shows no reference to conveyances, except that conveyances by a married woman must be "with the written assent of the husband," and the only "formality" named is the privy examination. There is no attempted extension of Rev., 2107, to conveyances.

Rev., 2107, comes under subhead 3, entitled *"Contracts* between husband and wife," and provides: "No *contract* between a husband and wife during coverture shall be valid to affect or charge any part of the real estate of the wife or the accruing income thereof for longer time than 3 years next ensuing the making of such *contract,* or to impair or charge the body or capital of the personal estate of the wife or of the accruing income thereof for a longer time than 3 years next ensuing the making of such *contract,* unless such *contract* shall be in writing, and be duly proved as is required for conveyances of land; and upon the examination of the wife, separate and apart from her husband, as is now or hereafter may be required by law in the probate of deeds of *femes covert,* it shall appear to the satisfaction of such officer that the wife freely executed such *contract,* and freely consented thereto at the time of her separate examination, and that the same is not unreasonable or injurious to her. The certificate of the officer shall state his conclusions, and it shall be conclusive of the facts therein stated. But the same may be impeached for fraud as other judgments may be." *Rea v. Rea, supra,* after setting out the above section in full, says: "An examination of section 2107 shows that it applies solely to contracts, and not to conveyances; indeed, the word *'contract'* is used 5 times in that section, besides in the heading. The object of the Legislature was clearly to prevent the wife making any contract with her husband

whereby she should incur liability against her estate which in future might prove a burden or charge upon it, or cause a charge upon or impairment of her income or personalty. To that end not only a privy examination was required, but the certificate of the magistrate that the contract was not unreasonable or injurious to her. This provision does not attempt to add as to conveyances by her, as to which the act of 1911 retains the constitutional restrictions in regard to realty, that there must be the written assent of the husband and statutory privy examination, any further restriction, such as the approval of a third person." Adding that if it did· it would be unconstitutional.

Laws 1911, ch. 109 (the Martin Act), provides: "Subject to the provisions of Rev., 2107, every married woman shall be authorized to contract and deal so as to affect her real and personal property in the same manner and to the same effect as if she were unmarried; but no conveyance of real estate shall be valid unless made with the written assent of her husband, as provided by section 6, Article X of the Constitution, and a privy examination as to the execution of the same, taken and certified as required by law." *Rea v. Rea, supra* (p. 531), after quoting the above, says: "This recognizes that section 2107 applies to contracts, and that the only restriction upon conveyances by a married woman is the constitutional one, requiring the written assent of her husband."

In *Rea v. Rea, supra, Brown, J.,* says, p. 536: "By the Martin Act (introduced by Senator J. C. Martin in the General Assembly of 1911) the wives have been emancipated and are placed on an equal footing with their single sisters, except that in order to convey their real estate they must still have the written consent of their husbands." Nothing is said by him as to supervisory judgment of a justice protecting the incompetence of wives from the presumed fraud or duress of husbands.

Laying aside preconceived opinions and taking the law as it has been really and plainly and unmistakably written in the Constitution and the statutes, we find that the Constitution guaranteed to married women the absolute right to convey with no other restriction than the written assent of their husbands.

We find also that Rev., 2107, which requires a justice of the peace, in the great wisdom of that officer, to supervise the contracts of married women with their husbands, does not attempt to violate the Constitution by adding restrictions to their freedom in making conveyances, but by its terms applies only to contracts by them, and is intended to protect them from incurring liabilities for the debts of their husbands. *Rea v. Rea,* 156 N. C., p. 531.

By reference to the Martin Act, ch. 109, Laws 1911, we find that by it married women were given full liberty to *contract,* except with their

husbands under 2107, as if unmarried, but restricted their conveyances with the written assent of the husband by adding only that there must be a privy examination.

We are cited, however, to *Singleton v. Cherry,* 168 N. C., 402, as an opinion without any dissent. A very great lawyer said that he paid "less attention to an opinion where there was no dissent than when there was, because the former was more likely to be an inadvertence, or not fully considered." But whether that is a witticism or a truism, an opinion, whether unanimous or inadvertent, cannot stand when it is contrary to the Constitution, by requiring restrictions on conveyances which were abolished by the Constitution, and the opinion is based solely upon a statute which refers only to contracts.

It may be repetition, but it is none the less true, that the Constitution having guaranteed to married women the right to convey merely "with the written assent of the husband," the requirement of a privy examination is adding a restriction in violation thereof. It is a survival of antiquated ideas as to the thorough incompetence of married women which the Constitutions of this and all other States have now repudiated. To require the privy examination since the Constitution of 1868 is to go back to the exact requirement for conveyances by married women prior to the Constitution. The former statute is brought forward, it is true, in the Revisal, but even treating the constitutional provision as of no more vigor than the legislative enactment, in such cases the later law governs.

The Constitutional Convention was not inadvertent to the fact that they were abolishing the privy examination, for to require it would have made useless the right to convey "with the husband's assent," and the Constitution requires the privy examination as to the wife's joinder in a conveyance of the husband's homestead, after it is allotted, thus permitting it in that case only. It may be added that North Carolina is one of only five States that still require the privy examination, and in none other of those is the Constitution as explicit in freeing women from the shackles of the common law as to their conveyances as is our Constitution. However, in this case the privy examination was duly taken.

In conclusion—the Constitution forbids any restriction upon the absolute freedom of married women in disposing of their property by will or deed, save that in conveyances of realty there must be the written assent of the husband.

No statute imposes any restriction on conveyances by married women over and above such written assent, except the privy examination, already discussed. Rev., 2107, is expressly limited to *contracts,* and does not mention conveyances.

The Martin Act, Laws 1911, ch. 109, frees married women from restrictions as to *contracts,* except with the husband, which it retains, as set out in Rev., 2107, and it has a proviso retaining (unconstitutionally, as I believe) the requirement of a privy examination—but nothing more. Anything beyond the above provisions of the Constitution and the statute is of judicial origin and in accordance with preconceived opinions, for which there is no foundation in the statute, and is forbidden by the clear, unmistakable language of the Constitution.

The status of the inferiority of women was not created by statute, but by judicial decision of ancient judges in England, who were thoroughly steeped in that belief, and especially of the incompetence and incapacity for control of property by those women who were so ill-advised as to marry—whom, indeed, the judges held to be the chattels of their husbands. This has long ago been corrected by statute in England, which recognizes the full right of women, whether married or single, to the absolute control of their own property. For 40 years there has been no privy examination required of a married woman in England, and in very few of our sister States do they retain the requirement of our Constitution that the husband shall give his written assent to his wife's conveyance. With that single restriction our Constitution of 1868 recognized the full property rights of married women, and we should accept the view of their rights and capacity now so plainly recognized and written in our Constitution and laws.

When a statute can be construed in a way that reconciles it with the Constitution, this should be done. Rev., 2107, by its terms, six times repeated therein, applies to *contracts,* and in that light no one can question its constitutionality, whatever criticism there may be of the implied presumption of incapacity on the part of wives and of duress or fraud on the part of husbands; for, otherwise, the presumption would be, as in other contracts between persons *sui juris,* of the validity of contracts unless incapacity or fraud or duress are shown. If the statute, Rev., 2107, had attempted to go further, and had added to the "written assent of the husband," which the Constitution fixes as the sole restriction upon the *jus disponendi* in the conveyance by a married woman of her realty, the requirement that some justice of the peace should weigh the trade and give his wise approval, this would repeal the constitutional provision. This the statute did not do, and it should not be so construed.

If to the sole constitutional requirement of the "written assent of the husband" there can be added the further requirement that a justice of the peace must approve the action of the wife, as to this class of deeds, this could be required as to every deed by her. If the approval of a justice of the peace (or other restriction) can be imposed as to deeds

by married women, it can be required as to wills by them, thus destroying entirely, effectively, and altogether, the freedom of the disposition of their property, real and personal, "as fully *as if unmarried,*" which was solemnly guaranteed to all married women by the Constitution, with the sole exception that as to their conveyances there should be the written assent of the husband.

If the approval of a justice of the peace or a privy examination can be added to the constitutional requirement as to deeds by married women, the same or any other restriction can be required as to wills by them.

The constitutional provision made married women *sui juris* in every respect, save that one restriction, of requiring assent of the husband to conveyances. Good faith has not been kept with the mothers and wives of North Carolina. The guarantee that they should, with such assent, convey "as if unmarried" is not kept when unmarried women can convey without the wise approval of a justice of the peace, and when a man can convey without his privy examination being taken. We are governed by preconceived opinions and the dead hand of the past, and not by the provisions of a written Constitution.