J. M. W. FRISBEE v. D. F. COLE.

(Filed 21 April, 1920.)

1. **Husband and Wife—Deeds and Conveyances—Probate—Statutes—Conclusions—Presumptions—Evidence.**

   The Statute, Rev., 2107, only requires that the officer taking the probate of a deed to lands from a wife to her husband shall state his conclusions that the contract or deed "is not unreasonable or injurious to her," and it will be conclusively presumed that it was upon sufficient evidence, and

FRISBEE *v.* COLE.

where the statutory requirements have been followed, the action of the officer taking the probate is not open to inquiry in a collateral attack in impeachment of it, except "for fraud, as other judgments may be" so attacked; as where the purchaser from the husband refuses to accept his deed upon the ground that the husband, having a short time previously conveyed the lands to his wife, her reconveyance was necessarily "unreasonable or injurious to her."

**2. Deeds and Conveyances— Acknowledgment— Subsequent Probate— Proof—Husband and Wife.**

Where the husband joins with his wife in the execution of a deed to her lands, and it is certified that he had assented thereto at that time, the objection to the probate of the husband that it was taken after his wife's death is untenable, for the probate or acknowledgment is not the execution of the deed, but the proof thereof.

CLARK, C. J., concurring.

CIVIL ACTION, tried before *Webb, J.,* on a case agreed, at February Term, 1920, of BUNCOMBE.

This is a controversy in regard to the title of land arising out of the sale of the same by the plaintiff to the defendant. The tract contains 163 acres, more or less, and the defendant promised to pay for the same the sum of $125 per acre, the number of acres to be ascertained by a survey of the premises, upon the payment of which sum the plaintiff promised to convey to the defendant a good title to the said land free from all liens and incumbrances. Plaintiff was originally owner of the land, and on 10 May, 1898, conveyed it to his wife, R. E. Frisbee, by deed of that date duly proved and registered, and on 10 June, 1898, she conveyed it back to him "for and in consideration of . . . dollars," the amount not being set forth in the deed, and it being agreed that no consideration passed from the plaintiff to his wife for the last mentioned deed. The deed from his wife to plaintiff was jointly executed by him with her, and witnessed by R. E. Wells, and was proved, and afterwards registered, upon the following certificate of the clerk of the Superior Court of Buncombe County, where the land is situated on the waters of Turkey and Newfound creeks:

North Carolina—County of Buncombe.

I, J. L. Cathey, clerk of the Superior Court of Buncombe County, do hereby certify that R. E. Frisbee (and her husband, J. M. Frisbee, consenting thereto in writing as heretofore appears) personally appeared before me this day and acknowledged the due execution by her of the foregoing deed, the said R. E. Frisbee being by me examined, separate and apart from her said husband, touching her voluntary execution of the same, doth state that she signed the same freely and voluntarily, without fear or compulsion of her said husband or any other person, and

that she still voluntarily assents thereto, and it appearing to the undersigned clerk that same is not unreasonable or injurious to the said R. E. Frisbee, and all things appearing to the satisfaction of the undersigned clerk, it is adjudged that the foregoing is not unreasonable or injurious to the said R. E. Frisbee. Therefore, let the same, with this certificate, be registered. This 9 June, 1898.　　　　　J. L. CATHEY,
　　　　　　Clerk of the Superior Court of Buncombe County, N. C.

State of North Carolina—County of Buncombe.

The due execution of the foregoing instrument by J. M. Frisbee was this day proven before me by the oath and examination of R. M. Wells, the subscribing witness thereto. Let said instrument and this certificate be registered.

　　　Dated 26 January, 1920. .　　　　　JOHN H. CATHEY,
　　　　　　Clerk of the Superior Court of Buncombe County, N. C.

North Carolina—Buncombe County.

I, J. H. Cathey, clerk of the Superior Court, hereby certify that J. M. Frisbee this day personally appeared before me and acknowledged the due execution by him of the foregoing instrument. Let the same with this certificate be registered. This 26 January, 1920.

　　　　　　　　　　　JOHN H. CATHEY,
　　　　　　Clerk Superior Court, Buncombe County, N. C.

The last two proofs were taken and the last two certificates were made several years after the death of Mrs. Frisbee.

Defendant resisted recovery of the purchase money and the performance of the contract of sale on the ground that plaintiff could not convey a good and indefeasible title because there being no consideration for the deed from R. E. Frisbee to the plaintiff, the deed to the husband was necessarily injurious to her, and notwithstanding the certificate of the clerk that it was not unreasonable or injurious to her, the deed was void as to her, and the plaintiff, her husband, acquired no title to the land, and therefore could not pass a good title to the defendant as he contracted to do.. The court, Judge Webb presiding, was of the opinion that the deed was valid, and that the plaintiff could comply with his contract, and so held and gave judgment for $20,750, the amount due. Defendant appealed.

　*Zeb F. Curtis and Harkins & Van Winkle for plaintiff.*
　*Martin, Rollins & Wright for defendant.*

WALKER, J., after stating the facts as above: We do not see that the cases cited by the learned counsel for the defendant militate at all against

our view of this case, which agrees with that of the learned judge who presided at the trial. These cases are *Sims v. Ray,* 96 N. C., 87; *Rea v. Rea.,* 156 N. C., 529; *Archbell v. Archbell,* 158 N. C., 408; *Singleton v. Cherry,* 168 N. C., 402; *Butler v. Butler,* 169 N. C., 584. They were cited by the defendant for the position that the deed of a married woman is void, unless the probate of the deed and the privy examination of the wife are properly taken under Rev., 2107, and upon inquiry of the officer taking the same it shall appear, as further required by said section, that the contract or deed is not unreasonable or injurious to her. The section further provides that "the certificate of the officer shall state his conclusion, and shall be conclusive of the facts therein stated. But the same may be impeached for fraud as other judgments may be." In this case there is no direct attack upon the certificate of the clerk attached to Mrs. Frisbee's deed, nor is there any suggestion or intimation of fraud or collusion or other fact sufficient to set it aside. The complaint simply states that plaintiff made the contract of sale with the defendant, and is ready, able, and willing to comply with it, and that defendant has failed and refused to do so, and demands judgment for the amount of the purchase money. The defendant, in his answer, admits the contract but denies that plaintiff is the owner of the lands, and is able, ready, and willing to give him a good title thereto. There is no direct attack in the pleadings upon the certificate of the clerk. The assault, as appears, is not on the certificate as having been fraudulently or collusively obtained, but is upon the finding of the clerk, that the deed is not unreasonable or injurious to Mrs. Frisbee. This is based upon the admission of the parties that there was no consideration for the deed. But is this sufficient to annul the finding of the clerk as contained in his certificate, when the inquiry as to the facts was properly conducted, and the adjudication and certificate of the clerk, as to them, were regularly made? We are of the opinion, as was the learned judge, that it is not. The statute itself expressly declares that the clerk shall state his conclusions, but not the evidence upon which they were based, and that his findings shall be conclusive, but may be impeached for fraud as other judgments may be. It, therefore, must be seen that, according to the statute, the defendant cannot avoid the clerk's certificate in the collateral way he has adopted, and that it must stand for the truth until it is properly impeached and set aside. It would not do to permit an attack upon the certificate, or any finding in it, by extraneous evidence which was not brought forward for the purpose until many years had elapsed since it was made by the clerk. It was a most solemn adjudication by him, and presumably upon ample evidence to warrant his conclusion, which should not be contradicted or set at naught by any such irregular and unauthorized method. The proceeding to set aside this record

should, at least, be as solemn as the one which made it. But we have the authority of this Court to the same effect. *Wynne v. Small,* 102 N. C., 133-136, which involved the validity of a married woman's deed, and the legal effect of the clerk's certificate, *Chief Justice Smith* said: "It is true that the certificate, while it retains its form, from the verity attaching to it as such, must be accepted, when it comes up collaterally, and its recitals cannot be disproved, nor its omissions supplied by extraneous proof." Any record, as he says, may be amended to make it speak the truth, when something was omitted by inadvertence, which was really a part of the record. But that is not the question here. It is merely attempted to contradict the record by evidence *dehors,* and that, too, when it does not appear whether that evidence was before the clerk. If it was not before him, it is too late for it to be heard now, if it was before him, then there is no use in offering it at this time, as the presumption is that he gave it due consideration, and that, notwithstanding, he reached, upon all the circumstances in evidence, the conclusion as stated in his certificate. The evidence upon which he proceeded is not before us, but his conclusions are, and they are presumed to have been based upon sufficient evidence, nothing else appearing, to rebut that presumption.

It appears here that the land now in question was formerly owned by the husband; that he conveyed it to his wife, and she a month afterwards reconveyed it to him, which gives color to the theory that there had been some understanding between them entered into for their joint benefit, by which she was under some obligation to act as she did by executing the deed to her husband, and that the clerk found the arrangement, whatever it was, was not unreasonable or injurious to her. We would not change his finding, if we could do so, without knowing what evidence the clerk had before him. In the absence of such knowledge, we must presume conclusively that his decision was correct. It cannot be reversed simply upon suggestion that he found erroneously, or upon extraneous matter, without first setting aside his judgment for fraud or upon some other legal and adequate ground. While the order or judgment stands, it must be respected as importing verity, as "jurisdiction existing, any order or judgment is conclusive in respect to its own validity, in a dispute concerning any right or title derived through it, or anything done by virtue of its authority." Vanfleet on Collateral Attack, sec. 17, p. 29; *Irvine v. Randolph L. Corporation,* 111 Va., p. 408. The clerk of the court had jurisdiction to hear the evidence and determine therefrom whether the deed would be reasonable and not injurious to the wife, and his judgment is final and conclusive until reversed in proper proceedings for that purpose. The following cases show what the law is in this State with respect to judgments of courts which have general jurisdiction, and

their exemption from collateral attack: *Wade v. Dick,* 36 N. C., 313; *Morris v. Gentry,* 99 N. C., 483; *Beckwith v. Lamb,* 35 N. C., 400; *Marshall v. Fisher,* 46 N. C., 111-115. *Chief Justice Pearson* says for the Court, in *Marshall v. Fisher, supra,* citing *Beckwith v. Lamb,* 35 N. C., 400: "Every court, where the subject-matter is within its jurisdiction, is presumed to have done all that is necessary to give force and effect to its proceedings, unless there is something on the face of the proceedings to show to the contrary. This must be the rule, unless we adopt the conclusion that the court is unfit for the business which by law is confided to it."

With regard to courts of special or limited jurisdiction, the rule is not so broad as the other which is applicable to those of general jurisdiction, but they also are, to a certain extent, immune from indirect or collateral attack, as will appear from the text-books and decisions. *Justice Hoke* says, in *Fann v. R. R.,* 155 N. C., at margin p. 139: "In this day and time, and under our present system, it seems to be generally conceded that the decrees of probate courts, when acting within the scope of their powers, should be considered and dealt with as orders and decrees of courts of general jurisdiction, and where jurisdiction over the subject-matter of inquiry has been properly acquired, that these orders and decrees are not, as a rule, subject to collateral attack."

Referring to administration on an estate, where the question as to the domicile of the intestate and the place where his assets are as determining the right of administration and the power of the clerk to appoint a personal representative, he further says: "These are the very questions referred to him (the clerk) for decision. But if a person has been selected contrary to the prevailing rules of law, the error must be corrected by proceedings instituted directly for the purpose, and not by a collateral attack on the letters," citing several cases.

It may be, as we have said, and now repeat, that the clerk ascertained and determined from all the facts and circumstances that the conveyance by the husband to the wife, and her reconveyance to him one month afterwards, were acts done in furtherance of an arrangement or agreement between them to advance their joint interests, and that, instead of being injurious, it was reasonable and a distinct advantage to her. We can conceive of circumstances in which she might be benefited. But whatever the nature of the transaction was, we must presume the clerk acted properly, and rightly, instead of improperly and wrongly, as there is no principle which would justify the latter conclusion in a collateral proceeding.

There is nothing in the objection that the probate of the husband was taken after the wife's death. He assented to the conveyance, at the time it was executed, as stated by the clerk in the first certificate made at the

time, and he joined in the execution of the deed with his wife though his acknowledgment of the execution by him was made some time afterwards. The latter is not the execution of the deed by him, but merely the proof thereof, and the taking of it long afterwards, does not affect the validity of the conveyance. Rev., 953.

There was no error in Judge Webb's ruling as to the plaintiff's title. Affirmed.

CLARK, C. J., concurs on the following grounds: The Constitution, Art. X, sec. 6, provides that a married woman shall hold her property in the same manner as if she had remained single, and may devise and bequeath it, and, "with the written assent of her husband, convey it," as if she were unmarried. Even this requirement of the husband's assent has long since been abolished in England, and with rare exceptions by all the States in this country. It is the sole restriction permitted by our State Constitution upon the wife's power to dispose of her own property. If Rev., 2107, extended to conveyances, it would be a violation of that provision of the Constitution by adding the requirement that some third party, a magistrate or other official, must give his wise approval before she can do what the Constitution guarantees that she may do "with the approval of her husband."

In the second place, out of deference to the Constitution, Rev., 2107, does not mention conveyances of realty. That section comes under subhead 3, entitled, *"Contracts* between husband and wife," and an examination of the section shows that it applies only to *contracts*. In *Rea v. Rea,* 156 N. C., 530, it is said: "An examination of section 2107 shows that it applies solely to contracts, and not to conveyances; indeed, the word 'contract' is used 5 times in that section, besides in the heading. The object of the Legislature was clearly to prevent the wife making any contract with her husband whereby she should incur liability against her estate which in future might prove a burden or charge upon it, or cause a charge upon or impairment of her income or personalty. To that end not only a privy examination was required, but the certificate of the magistrate that the contract was not unreasonable or injurious to her. This provision does not attempt to add as to conveyances by her (as to which the act of 1911 retains the constitutional restrictions in regard to realty, that there must be the written assent of the husband and statutory privy examination), any further restriction, such as the approval of a third person. Adding that if it did it would be unconstitutional," *quoted, Butler v. Butler,* 169 N. C., 597.